J-A04021-18

2018 PA Super 171

| NIKOS FLOROS PHELPS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LOUIS L. CAPEROON | : | No. 873 MDA 2017 |

Appeal from the Judgment Entered May 30, 2017
In the Court of Common Pleas of Dauphin County Civil Division at No(s):
2012-CV-10889-CV

| NIKOS FLOROS PHELPS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LOUIS L. CAPEROON | : | |
| | : | |
| Appellant | : | No. 923 MDA 2017 |

Appeal from the Judgment Entered May 30, 2017
In the Court of Common Pleas of Dauphin County Civil Division at No(s):
2012-CV-10889-CV

BEFORE: STABILE, J., NICHOLS, J., and RANSOM, J.[*]

OPINION BY NICHOLS, J.:                          **FILED JUNE 18, 2018**

Appellant/Cross-Appellee Nikos Floros Phelps (Buyer) appeals from the judgment entered following a bench trial on his claims under the Real Estate Seller Disclosure Law (RESDL),[1] Unfair Trade Practices and Consumer

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 68 Pa.C.S. §§ 7301-7315.

Protection Law (UTPCPL),[2] and fraudulent misrepresentation against Appellee/Cross-Appellant Louis L. Caperoon (Seller). Seller, in turn, cross-appeals from the order granting summary judgment in favor of Buyer on his RESDL claim. We affirm in part, reverse in part, and remand for further proceedings, as set forth below.

The trial court set forth the relevant facts below:

This matter stems from a residential real estate transaction between [Buyer] and [Seller]. The subject property is located at . . . Parkway East, Lower Paxton Township, Dauphin County, Pennsylvania (hereinafter "the Property"). The Property consists of a 165 year-old, 1,888 square-foot, two (2) story single family home, with an unfinished basement, together with several outbuildings (barn, garage, greenhouse structures) on 7.98 acres of land. After negotiating, the parties agreed that [Buyer] would lease the Property for a period of six (6) months, and at the end of the lease term, [Buyer] would purchase the property. On June 30, 2010, the parties executed an Agreement of Sale contemporaneous with a lease agreement.

Trial Ct. Op., 8/1/17, at 1-2.

Prior to signing the Agreement of Sale, Buyer inspected the Property three times. R.R. at 52a-53a.[3] During his inspections, Buyer testified he asked Seller if there was anything he needed to know and Seller responded that "everything was fine. There was nothing to be concerned with." *Id.* at 54a. Buyer acknowledged that he chose not to hire a property inspector and that he was aware that a seller should provide a RESDL disclosure statement.

---

[2] 73 P.S. §§ 201-1 to 201-9.3.

[3] We cite to the reproduced record for the parties' convenience.

- 2 -

*Id.* at 145a. Buyer stated he did not find it unusual that Seller did not provide a RESDL disclosure statement in this case. *Id.*

> Paragraph 11 of the Agreement of Sale provided as follows:
>
> Inspection of Premises - Buyer certifies that he has personally inspected the premises, or has caused it to be inspected in a manner satisfactory to him. Buyer agrees that the property is in satisfactory condition and repair. Buyer hereby acknowledges that he is purchasing the property "as is". Buyer expressly waives any and all implied warranties to which the Buyer might be entitled, and acknowledges that he was given no express warranties.

*Id.* at 16a.

Buyer lived at the Property for six months under the lease. It was only after Buyer purchased the Property, however, that he discovered numerous deficiencies, including a deteriorated septic system requiring replacement; a cracked furnace heat exchanger; leaky roof; flawed electrical wiring; water damage from a never-connected washer drain; and various issues associated with the improper removal of load-bearing walls and heating ducts.[4] ***See generally*** Compl., 1/8/13, at ¶ 7.

Buyer sued Seller, raising three claims: (1) violation of RESDL; (2) violation of UTPCPL; and (3) fraudulent misrepresentation. With respect to his first claim, Buyer averred that Seller failed "to disclose material defects,"

---

[4] At trial, Buyer testified that he did not discover these deficiencies during his six-month lease term because they were "hidden." R.R. at 64a.

- 3 -

in the disclosure form required by RESDL. Compl., 1/8/13, at ¶¶ 4, 9. With respect to his claim for RESDL damages, Buyer alleged as follows:

> The total damages suffered by [Buyer] as a result of [Seller's] failure to disclose material defects, as required by [RESDL] are unknown precisely, as [Buyer] continues to investigate the best and most cost-effective solutions to the various problems, but said damages are currently estimated to be approximately $120,000.00. [Buyer] reserves the right to supplement this averment as his investigation continues.

Compl., 1/8/13, at ¶ 9; *id. ad damnum* cl.

Seller admitted that he did not provide Buyer a RESDL disclosure form. Answer, 5/6/13, at ¶ 4. Seller further averred that he "did not disclose any of the material defects alleged [by Buyer] solely because no such defects existed or were known to [Buyer] at the time the Agreement of Sale was entered into." *Id.* Seller additionally asserted that no disclosure was required because it was a sale of commercial property. *Id.* at ¶ 9.

At the close of discovery, Buyer moved for partial summary judgment on Seller's liability under RESDL. Seller filed an answer and cross-motion for summary judgment on all of Buyer's claims. Buyer, in turn, filed an answer in opposition to Seller's cross-motion.

Following a hearing, the trial court denied Seller's cross-motion and granted Buyer's motion for partial summary judgment on Buyer's liability under RESDL. The court reasoned that the "provisions of the [RESDL] cannot be waived." Order, 4/23/15. The court ordered that Seller "is liable to [Buyer]

- 4 -

for all damages, if any, resulting from the material defects alleged in [Buyer's] Complaint, in an amount to be proven by [Buyer] at trial." ***Id.***

On December 13 and 29, 2016, the trial court held a bench trial.[5] Buyer did not orally move for or file a motion for a directed verdict at the close of evidence.

On May 4, 2017, the trial court awarded damages of $39,065.02 to Buyer for Seller's violation of RESDL with respect to "(1) the defective roof and resulting water damage; and (2) re-wiring of the electric which resulted in hidden junction boxes and open air splices."[6] Memo. Op. & Order, 5/4/17, at 13. The court found in favor of Seller on Buyer's remaining claims of UTPCPL and fraudulent misrepresentation. ***Id.***

Buyer filed a timely post-trial motion that, in relevant part, challenged the trial court's award of RESDL damages. Buyer claimed that the court miscalculated RESDL damages and did not consider whether he was entitled to additional damages of $194,692.82, representing consequential and

---

[5] We provide a more detailed summary of the relevant trial testimony in our discussion of Buyer's claim for RESDL damages below.

[6] The trial court prematurely entered judgment in favor of Buyer before the filing of post-trial motions.

difference-in-value damages under ***Skurnowicz v. Lucci***, 798 A.2d 788, 795 (Pa. Super. 2002).[7]

The trial court denied Buyer's post-trial motion on May 24, 2017, before Seller filed a response. The court formally entered judgment on May 30, 2017, and Buyer timely appealed on May 31, 2017. Although Seller did not file a post-trial motion, he timely cross-appealed on June 9, 2017.[8] Each party filed a timely court-ordered Pa.R.A.P. 1925(b) statement. Seller's Rule 1925(b) statement claimed that the existence of the "as is" statement in the Agreement of Sale precluded any RESDL liability. Seller's Pa.R.A.P. 1925(b) Statement, 6/23/17, at 1-2.

**Seller's Cross-Appeal at 923 MDA 2017**

For ease of disposition, we first resolve the cross-appeal of Seller, who raises the following issue:

1. Whether the Summary Judgment Court erred in granting [Buyer's] motion for partial summary judgment when it found, as a matter of law, that the inclusion of an "as is" clause in the Agreement to purchase real estate was not sufficient to put [Buyer] on notice that there may be liabilities attendant to the purchase and relieve [Seller] of the obligation to provide a seller's disclosure form?

---

[7] Although Buyer failed to move for a directed verdict, he also contended in his post-trial motion that the trial court overlooked facts that would have justified judgment notwithstanding the adverse decision in his favor on his UTPCPL and fraudulent representation claims.

[8] We note that Seller's appellate issues relate to the trial court's order granting summary judgment on Buyer's RESDL claim. We add that this Court consolidated both parties' appeals for disposition.

2. Whether the Trial Court erred when it failed to find that [Seller] was entitled to an "advice of counsel" defense as to all of the allegations of [Buyer's] complaint?

Seller's Brief at 4.

**Seller's First Issue – The "As Is" Clause**

In support of his first issue, Seller contends that no Pennsylvania appellate court has ruled on whether an "as is" clause in a real estate sales contract negates the disclosure requirement set forth within RESDL, a statute. Seller's Brief at 35-36. Seller relies on **PBS Coals, Inc. v. Burnham Coal Co.**, 558 A.2d 562 (Pa. Super. 1989), which he claims controls, even though it predates RESDL.[9]  **Id.** at 33-34.

Our standard of review follows:

When a party seeks summary judgment, a court shall enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery.  A motion for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law.  In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the nonmoving party, and all

---

[9] **PBS Coals** also predates the materially similar statutory predecessor to RESDL, the Real Estate Seller Disclosure Act ("RESDA"), 68 P.S. §§ 1021-1036, which was enacted in 1996.

Seller also cites and discusses two trial court cases that purportedly support his position.  Seller's Brief at 36.  It is well-settled, however, that trial court decisions are not binding on this Court. **Echeverria v. Holley**, 142 A.3d 29, 36 n.2 (Pa. Super. 2016).  Regardless, in **Pritt v. Duracinsky**, 2003 WL 25460449 (C.C.P. Lehigh Cty. Nov. 25, 2003), the seller actually provided a RESDL disclosure. **Id.** at ¶ 18.  In **Vaughn v. Drab**, 73 Pa. D. & C.4th 550 (C.C.P. Allegheny Cty. 2005), the seller also provided a RESDL disclosure statement. **Id.** at 553-54.  Thus, both cases are distinguishable.

doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Finally, the court may grant summary judgment only when the right to such a judgment is clear and free from doubt. An appellate court may reverse the granting of a motion for summary judgment if there has been an error of law or an abuse of discretion.

**Erie Ins. Exch. v. Moore**, 175 A.3d 999, 1008 (Pa. Super. 2017) (citation omitted).

The rules of statutory construction are well-settled:

The Statutory Construction Act, 1 Pa.C.S. §§ 1901-1991, sets forth principles of statutory construction to guide a court's efforts with respect to statutory interpretation. In so doing, however, the Act expressly limits the use of its construction principles. The purpose of statutory interpretation is to ascertain the General Assembly's intent and to give it effect. In discerning that intent, courts first look to the language of the statute itself. If the language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent and not look beyond the statutory language to ascertain its meaning. Courts may apply the rules of statutory construction only when the statutory language is not explicit or is ambiguous.

. . . We must read all sections of a statute together and in conjunction with each other, construing them with reference to the entire statute. When construing one section of a statute, courts must read that section not by itself, but with reference to, and in light of, the other sections. Statutory language must be read in context, together and in conjunction with the remaining statutory language.

Every statute shall be construed, if possible, to give effect to all its provisions. We presume the legislature did not intend a result that is absurd, impossible, or unreasonable, and that it intends the entire statute to be effective and certain. When evaluating the interplay of several statutory provisions, we recognize that statutes that relate to the same class of persons are *in pari materia* and should be construed together, if possible, as one statute.

> Also, when interpreting a statute we must listen attentively to what the statute says, but also to what it does not say.

*Retina Assocs. of Greater Phila., Ltd. v. Retinovitreous Assocs., Ltd.*, 176 A.3d 263, 270 (Pa. Super. 2017) (citations and internal quotation marks omitted); *see also* 1 Pa.C.S. § 1928(a) (stating that for any statute that derogates common law and was adopted after September 1, 1937, we do not have to strictly construe that statute).

By way of background, RESDL, which became effective on December 20, 2001, applies "to all residential real estate transfers" except for certain types of transfers, none of which are applicable here. *See* 68 Pa.C.S. § 7302. Section 7303 provides as follows:

> Any seller who intends to transfer any interest in real property **shall** disclose to the buyer any material defects[10] with the property known to the seller by completing all applicable items in a property disclosure statement which satisfies the requirements of section 7304 (relating to disclosure form).[11] A signed and

_____

[10] RESDL defines "material defect" as follows:

> A problem with a residential real property or any portion of it that would have a significant adverse impact on the value of the property or that involves an unreasonable risk to people on the property. The fact that a structural element, system or subsystem is near, at or beyond the end of the normal useful life of such a structural element, system or subsystem is not by itself a material defect.

68 Pa.C.S. § 7102.

[11] Section 7304 provides for the following disclosures:

(1) Seller's expertise in contracting, engineering, architecture or other areas related to the construction and conditions of the property and its improvements.

(2) When the property was last occupied by the seller.

(3) Roof.

(4) Basements and crawl spaces.

(5) Termites/wood destroying insects, dry rot and pests.

(6) Structural problems.

(7) Additions, remodeling and structural changes to the property.

(8) Water and sewage systems or service.

(9) Plumbing system.

(10) Heating and air conditioning.

(11) Electrical system.

(12) Other equipment and appliances included in the sale.

(13) Soils, drainage, boundaries and sinkholes.

(14) Presence of hazardous substances.

(15) Condominiums and other homeowners associations.

(16) Legal issues affecting title or that would interfere with use and enjoyment of the property.

(17) Condition, if known, and location of all storm water facilities, including a statement disclosing whether ongoing maintenance of the storm water facilities is the responsibility of the property owner or the responsibility of another person or entity.

68 Pa.C.S. § 7304(b).

dated copy of the property disclosure statement **shall** be delivered to the buyer in accordance with section 7305 (relating to delivery of disclosure form) prior to the signing of an agreement of transfer by the seller and buyer with respect to the property.

68 Pa.C.S. § 7303 (emphases added).  Generally, a seller "should only be required to reveal material defects with the actual physical structure of the house, with legal impairments on the property, and with hazardous materials located there."  *Milliken v. Jacono*, 60 A.3d 133, 140 (Pa. Super. 2012) (*en banc*).

Section 7308 of RESDL imposes an affirmative duty on the seller:

The seller is not obligated by this chapter to make any specific investigation or inquiry in an effort to complete the property disclosure statement. In completing the property disclosure statement, the seller shall not make any representations that the seller or the agent for the seller knows or has reason to know are false, deceptive or misleading and shall not fail to disclose a known material defect.

68 Pa.C.S. § 7308.

The Pennsylvania Supreme Court "has recognized that the term 'shall' is mandatory for purposes of statutory construction when a statute is unambiguous."  *Koken v. Reliance Ins. Co.*, 893 A.2d 70, 81 (Pa. 2006) (some internal quotation marks and citation omitted); *accord SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018) ("The word 'shall' generally imposes a nondiscretionary duty." (citation omitted)).

In *PBS Coals*, a case that predates RESDL by over a decade, the parties executed an agreement for the sale of real property that had been inspected by both parties in the winter.  *PBS Coals*, 558 A.2d at 563.  The agreement

- 11 -

provided that the sale of the property was "as is." *Id.* at 564. In the spring, "an acid water discharge was discovered" on the property that neither party knew about. *Id.* at 563. The parties essentially disagreed over the meaning of "as is" as to which party under the agreement should pay for and fix the discharge. *Id.* at 564.

The *PBS Coals* Court noted that the "use of the term, 'as is' in the context of a transfer of real property interests present[ed] a question of first impression in Pennsylvania." *Id.* at 564. After summarizing pertinent caselaw from other jurisdictions, the Court held that the parties' "agreement contained a term which has common meaning; when something is accepted 'as is' the buyer is put on notice that there may be liabilities attendant to the purchase." *Id.* The Court thus held that the buyer of the real property was obligated to resolve the discharge because it purchased the property on an "as is" basis. *Id.* at 565. Because *PBS Coals* predated RESDA and RESDL, the Court did not address any statutory disclosure requirement.

Here, Seller essentially asks this Court to conclude that the "as is" clause in a separate, distinct agreement of sale and the holding of *PBS Coals* permits him to escape the obligatory statutory language of "shall" in Section 7303. However, Seller does not refer us to any RESDL section or caselaw permitting him to disregard the mandatory language of Section 7303. In fact, Seller does not raise any statutory interpretation argument or argue that the Agreement of Sale was a contractual waiver of Section 7303.

In contrast, RESDL, which was enacted over a decade after **PBS Coals**, contains mandatory language: "Any seller who intends to transfer any interest in real property **shall** disclose to the buyer any material defects with the property known to the seller." 68 Pa.C.S. § 7303 (emphasis added); **Koken**, 893 A.2d at 81. RESDL contains no exceptions to the disclosure requirements, including the presence of an "as is" clause in an agreement to transfer residential real estate, and thus, Seller must comply.[12] **See** 68 Pa.C.S. § 7303; **Koken**, 893 A.2d at 81; **Retina Assocs. of Greater Phila.**, 176 A.3d at 270.[13] Thus, we conclude that Seller has not established that he does not have to comply with RESDL's disclosure requirement because of an "as is" clause in an agreement of sale.

### Seller's Second Issue – Advice of Counsel

Seller's second argument, which we quote in its entirety, is as follows:

> [Seller], relying on the advice of counsel, sold the Property "as is" and did not provide [Buyer] with a seller's disclosure form. A good faith reliance on the advice of counsel establishes a defense to a

---

[12] We perceive no conflict between the disclosure mandate of 68 Pa.C.S. § 7303, and inclusion of an "as is" provision in a real estate sales contract. **Cf.** 68 Pa.C.S. § 7313 (stating that RESDL "does not limit or abridge any obligation for disclosure created by any other provision of law or that may exist in order to avoid fraud, misrepresentation or deceit in the transaction").

[13] To the extent that Seller's "as is" argument could be construed as a contention that Buyer contractually waived the RESDL disclosure requirement, Seller has not identified facts establishing Buyer's intent to affirmatively relinquish the statutory right to disclosure. **See Brown v. City of Pittsburgh**, 186 A.2d 399, 401 (Pa. 1962).

under the **_Dragonetti_**[14] statute (**_Miller v. St. Luke's Univ. Health Network_**, 142 A.3d 884, 897 ([Pa. Super.] 2016), **_appeal denied_**, 164 A.3d 479 (Pa. 2016)) and should also establishes a good faith defense under the RESDL.

Because of his reliance on the advice of counsel, [Seller's] violation of the RESDL was not willful or negligent and he should not be liable to [Buyer] for any damages under the RESDL.

Seller's Brief at 37.

Initially, Seller's reliance on **_Miller_** is inapt because the language of the

Dragonetti statute explicitly permits a defense of "advice of counsel."[15] **_See_**

---

[14] "[A]llegations of malicious prosecution invoke Pennsylvania's statutory law in the form of the wrongful use of civil proceedings statute or 'Dragonetti Act.'" **_Werner v. Plater-Zyberk_**, 799 A.2d 776, 785 (Pa. Super. 2002) (citation omitted).

[15] One element of a cause of action for wrongful use of civil proceedings is the absence of probable cause:

**(a) Elements of action.—**A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:

(1) he acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

(2) the proceedings have terminated in favor of the person against whom they are brought.

42 Pa.C.S. § 8351(a).

The "probable cause" required to pursue the above claim, however, may not be established if the following element (among others) is met:

42 Pa.C.S. § 8352(2). RESDL does not. *See* 68 Pa.C.S. §§ 7301-7315. Seller has not cited or otherwise argued that the mandatory language of 68 Pa.C.S. § 7303 regarding the provision of a seller's disclosure can be negated by "advice of counsel." *See* 68 Pa.C.S. § 7303. Accordingly, Seller has not established entitlement to relief.

## Buyer's Appeal at 873 MDA 2017

Buyer raises three issues:

1. Whether, under the Real Estate Seller Disclosure Law, damages are recoverable consisting of: (a) the difference in value between the actual market value of the property at the time of the transaction and the higher price the buyer paid as a result of the seller's failure to provide the statutorily required disclosures; and/or (b) consequential damages, including the cost to replace a roof?

2. Whether a buyer of residential real estate, who was in a fiduciary relationship with and relied on the seller, may recover damages under the Unfair Trade Practices and Consumer Protection Law where the seller failed to disclose defects in violation of a statutory duty to do so; actively concealed defects; and falsely said that the property was without major problems, if

---

A person who takes part in the procurement, initiation or continuation of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and either:

. . .

(2) believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information[.]

42 Pa.C.S. § 8352(2).

- 15 -

the agreement of sale contains an "as is" clause and an integration clause?

3. Whether a buyer of residential real estate, who was in a fiduciary relationship with and relied on the seller, may recover for fraudulent misrepresentation where the seller failed to disclose defects in violation of a statutory duty to do so; actively concealed defects; and falsely said that the property was without major problems, if the agreement of sale contains an "as is" clause and an integration clause?

Buyer's Brief at 3.

### Buyer's First Issue - RESDL Damages

Before addressing Buyer's arguments in support of his first claim, we briefly summarize the relevant damages testimony presented at trial. Ray Woof, Jr., a real estate appraiser, testified for Buyer. R.R. at 189a. Woof valued the Property at $200,000 with all of its issues and opined that the Property would have been worth $325,000, had it been in average condition. *Id.* at 193a-94a; *see also id.* at 519a-540a (Woof's appraisal report). Buyer's counsel also moved into evidence Plaintiff's Exhibit 9, which was a letter from witness Dwayne Gilbert[16] estimating that the cost to replace the

---

[16] Although the trial court suggested that Buyer did not move Plaintiff's Exhibit 9 into evidence, the record establishes that Buyer's counsel stated that he was not going to move into evidence certain exhibits "up to Tab 9." R.R. at 181a. The next page of the transcript states that Buyer moved Tab 9 into evidence without objection. *Id.* at 182a.

Property's roof and beams was $60,318.30.[17]  *Id.* at 181a; *see also id.* at 517a (exhibit labeled "Plaintiff's Ex. 9").

*Buyer's First Argument in Support of His First Issue*

We summarize the first of Buyer's two arguments.  Buyer notes that a RESDL disclosure form requires a seller to disclose, among other things, issues with any structural items, issues with the roof, and any additions or remodeling.  Buyer's Brief at 19-20.  Buyer then discusses various issues with the Property that he believed should have been included in a disclosure statement.  *Id.*  Buyer asserts that under RESDL, he is entitled to "actual damages" in the form of difference-in-value and consequential damages.  *Id.* at 21-23 (citing *Skurnowicz v. Lucci*, 798 A.2d 788, 795 (Pa. Super. 2002), and *Vallies v. Sky Bank*, 591 F.3d 152 (3d Cir. 2009)).[18]  Buyer concludes

---

[17] In relevant part, the letter states that the Property "will need a complete roof replacement due to broken trusses and damage created by multiple long-term leaks.  Estimated cost is $60,318.30.  Also, once the roof is removed we will inspect the top plate to make sure there is no existing damage before installing the new roof trusses."  R.R. at 517a.

[18] "[I]t is well-settled that this Court is not bound by the decisions of federal courts, other than the United States Supreme Court, or the decisions of other states' courts."  *Eckman v. Erie Ins. Exch.*, 21 A.3d 1203, 1207 (Pa. Super. 2003) (citation omitted).  The *Eckman* Court further acknowledged that our Courts "recognize that we are not bound by these cases; however, we may use them for guidance to the degree we find them useful and not incompatible with Pennsylvania law."  *Id.* (citation omitted).

that the court erred by rejecting Woof's opinion establishing difference-in-value damages. *Id.* at 21.

***Skurnowicz*** *and* ***Vallies***, *the Cases Cited by Buyer*

In ***Skurnowicz***, the sellers, in 1997, provided a real estate disclosure statement disclaiming any knowledge of flooding issues with the property.[19] ***Skurnowicz***, 798 A.2d at 791. The buyers took possession and subsequently, the property was flooded. *Id.* at 792.

The buyers in ***Skurnowicz*** sued, raising "claims for fraudulent misrepresentation, negligent misrepresentation, breach of implied warranty of habitability, and violation of Unfair Trade Practices Act." *Id.* Notably, the buyers raised no claim for a violation of RESDA, the statutory predecessor to RESDL.

Following a bench trial, the trial court in ***Skurnowicz*** found for the buyers for their claims of fraudulent and negligent misrepresentation, and violation of the UTPCPL, and awarded approximately $30,000 in damages. *Id.* Both parties appealed and, among many other issues, challenged the amount of damages awarded as a result of the seller's fraudulent misrepresentation. *Id.* at 795.

---

[19] We note the property sale predated December 20, 2001, the effective date of RESDL.

This Court in **Skurnowicz** stated that when the aggrieved party elects to not

> rescind the [underlying real estate sales] contract, it may recover damages equal to: (1) the difference in value between the real, or market, value of the property at the time of the transaction and the higher, or fictitious, value which the buyer was induced to pay for it; and (2) the consequential damages suffered in reliance on the defendant's misrepresentation.

**Id.** (internal quotation marks and citations omitted).

Although summarizing the law for damages for a tort claim of fraudulent misrepresentation following a property transaction, the **Skurnowicz** Court did not address the definition of "actual damages" for a RESDA violation. Rather, the **Skurnowicz** Court held that the buyers waived their argument that the sellers violated RESDA because the buyers failed to include it in their Pa.R.A.P. 1925(b) statement.[20] **Id.**

Buyer also cites **Vallies**, in which the United States Court of Appeals for the Third Circuit resolved "whether a plaintiff must prove detrimental reliance in order to recover actual damages sustained because of a disclosure violation under § 1640(a) of the Truth in Lending Act ('TILA'), 15 U.S.C. §§ 1601–67."[21]

---

[20] Presumably, even if the issue was included in the Rule 1925(b) statement, the Court would not have granted relief because there was no RESDA claim.

[21] Briefly:

> Congress enacted TILA in 1968 to promote the informed use of credit. To achieve this goal, TILA sought to assure a meaningful disclosure of credit terms so that the consumer will be able to

***Vallies***, 591 F.3d at 154 (footnote omitted). Section 1640(a) of TILA states

in relevant part:

> Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part . . . is liable to such person in an amount equal to the sum of . . . any actual damage sustained by such person as a result of the failure . . . .

15 U.S.C. § 1640(a).

In the course of resolving that particular question, the ***Vallies*** Court

reviewed TILA's statutory language providing for "actual damage."

> The definition of the term "actual damages" is "[a]n amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses." *Black's Law Dictionary* 445 (9th ed. 2009). Coupled with the phrase "sustained by such person as a result of the failure," the statute "links the loss to the failure to disclose." The plain meaning of § 1640(a) requires causation to recover actual damages. In the context of TILA disclosure violations, a creditor's failure to properly disclose must cause actual damages; that is, without detrimental reliance[22] on faulty disclosures (or no disclosure), there is no loss (or actual damage).

---

compare more readily the various credit terms available to him and avoid the uninformed use of credit. A consumer who does not receive the requisite disclosures regarding a loan secured by his principal dwelling may rescind the loan agreement.

***Deutsche Bank Nat'l Trust Co. v. Gardner***, 125 A.3d 1221, 1224 (Pa. Super. 2015) (citation omitted).

[22] "[E]very court of appeals that has spoken on this issue has required a showing of detrimental reliance. Most district courts are in accord." ***Vallies***, 591 F.3d at 155 (footnotes to case citations omitted).

*Vallies*, 591 F.3d at 157 (some citations omitted). That Court later explained that the "compensatory remedy of actual damages is permitted only in cases where the violation caused harm—where harm was 'sustained by [the consumer] as a result of' the violation." *Id.* at 158 (citation omitted).[23]

*Seller's Argument*

Seller counters by observing that RESDL does not define the term "actual damages." Seller's Brief at 19-20 (citing *Gadbois v. Leb-Co. Builders*, 458 A.2d 555, 560 (Pa. Super. 1983)). Seller posits, however, that in real estate cases, "actual damages" should be defined as the lesser of two figures: (1) the difference in market value, and (2) the cost of repairs. *Id.* According to Seller, had the Legislature intended to award difference-in-value damages, it would have included that language in RESDL. *Id.* at 20-21. But even if RESDL does permit difference-in-value damages, Seller argues that Buyer's expert testimony on this subject was not credible. *Id.* at 21.[24]

---

[23] *See also Pa. Dep't of Gen. Servs. v. U.S. Mineral Prods. Co.*, 898 A.2d 590, 607 (Pa. 2006) (noting that "in all events, we will not eliminate the basic obligation on the part of those seeking to obtain compensation for property damage to establish that the repairs effectuated . . . are fairly attributable to the defendant's conduct, product, or instrumentality giving rise to the liability." (citation omitted)).

[24] Neither Buyer nor Seller addressed whether a buyer could affirmatively "detrimentally rely" on negligent or willful misrepresentations or omissions contained within an unprepared hypothetical Section 7303 disclosure. This is in contrast to the more common scenario in which the property seller actually provides a statutorily-required disclosure statement, but willfully or negligently misrepresents or omits items in the statement, upon which the

***Gadbois***, *the Case Cited By Seller*

In ***Gadbois****,* the buyers[25] purchased new homes from the builder. ***Gadbois***, 458 A.2d at 556. After the buyers moved in, improperly working sewer disposal systems resulted in raw sewage flooding their homes. ***Id.*** The builder failed to fix the systems, and the buyers sued, raising claims of breach of implied warranty of habitability and negligence. ***Id.*** The trial court ruled in the buyers' favor and awarded damages, concluding that the proper measure of damages is "the difference in market value of the house as warranted and as built, or, where the purchaser remains in possession, the reasonable cost to repair." ***Id.*** at 556-57 (internal quotation marks and emphasis omitted).

On appeal, the ***Gadbois*** Court held that possession was not relevant. ***Id.*** at 559. Rather,

> the measure of damages in cases where a homeowner sues for defective construction is the difference between the market value of the house as constructed and the market value that the house would have had if constructed as promised, with the qualification that if it is reasonably practical to cure the defects in construction by repairs, and if the cost of repairs does not exceed the difference

_____

buyer relied to its detriment. But given the absence of counseled argument on this question, we presume solely for this decision that detrimental reliance exists. Because neither party raised the issue, it is not before this Court. ***See generally Blumenstock v. Gibson***, 811 A.2d 1029, 1038 (Pa. Super. 2002) (stating, it "is not enough simply to assert that a statement was 'fraudulent' and that reliance upon it induced some action. . . . Before fraud will be found, a plaintiff must demonstrate that he justifiably relied on the false statement." (citations omitted)).

[25] There were multiple plaintiffs in ***Gadbois***.

in market value, then the measure of damages is the cost of repairs.

*Id.* This Court thus remanded to have the trial court award damages in an amount equal to the difference between the market value of the properties as constructed and the market value of the properties if they had been built with working sewer disposal systems. *Id.* As in *Skurnowicz*, the *Gadbois* Court did not define "actual damages" for a violation of any statutory disclosure requirement.

*The Law Pertinent to Buyer's First Argument*

Our standards of review are as follows:

Upon appeal of a non-jury trial verdict, we consider the evidence in a light most favorable to the verdict winner and will reverse the trial court only if its findings of fact lack the support of competent evidence or its findings are premised on an error of law.

When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected. The court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence.

It is inappropriate for an appellate court to make factual determinations in the face of conflicting evidence.

*Nicholas v. Hofmann*, 158 A.3d 675, 688-89 (Pa. Super. 2017) (citations omitted).

In determining whether the trial court properly construed RESDL, we must analyze and interpret its statutory language. ***See Retina Assocs. of Greater Phila.***, 176 A.3d at 270.

Section 7311(a) of RESDL explains that the seller's failure to comply with RESDL would result in liability for the buyer's actual damages:

> **(a) General rule.**—A residential real estate transfer subject to this chapter shall not be invalidated solely because of the failure of any person to comply with any provision of this chapter. However, any person who willfully or negligently violates or fails to perform any duty prescribed by any provision of this chapter **shall** be liable in the amount of actual damages suffered by the buyer **as a result of** a violation of this chapter. This subsection shall not be construed so as to restrict or expand the authority of a court to impose punitive damages or apply other remedies applicable under any other provision of law.

***Id.*** § 7311(a) (emphases added);[26] ***see also*** 68 P.S. § 1032 (repealed 2000) (statutory predecessor to Section 7311).

Recently, in ***Bailets v. Pa. Turnpike Comm'n***, 181 A.3d 324 (Pa. 2018), the Pennsylvania Supreme Court was asked to define "actual damages" as used in 43 P.S. § 1425 of the Whistleblower Law.[27] ***Id.*** at 326. "Actual

---

[26] Because RESDL "does not limit or abridge any obligation for disclosure created by any other provision of law or that may exist in order to avoid fraud, misrepresentation or deceit in the transaction," a plaintiff has other available causes of action. 68 Pa.C.S. § 7313(a). For example, one such claim could be fraud in the inducement. ***Youndt v. First Nat'l Bank of Port Allegany***, 868 A.2d 539, 547 (Pa. Super. 2005) (discussing ***Blumenstock***, 811 A.2d at 1037, and ***LeDonne v. Kessler***, 389 A.2d 1123 (Pa. Super. 1978)).

[27] "A court, in rendering a judgment in an action brought under this act, shall order, as the court considers appropriate, reinstatement of the employee, the

damages," however, was undefined, thus leaving the **Bailets** Court to resolve

whether "actual damages" included non-economic damages. **Id.** at 329. The

Court began by reiterating that Pennsylvania recognizes three categories of

damages:

> Compensatory damages are such damages as measure the actual loss, and are allowed as amends therefor. Exemplary, punitive, or vindictive damages are such damages as are in excess of the actual loss, and are allowed in theory when a tort is aggravated by evil motive, actual malice, deliberate violence, or oppression or fraud. . . . Of nominal damages, the definition is a trivial sum awarded where a mere breach of duty or infraction of right is shown with no serious loss sustained.

**Id.** at 332 (quoting **Springer v. J.H. Somers Fuel Co.**, 46 A. 370, 371 (Pa.

1900) (*per curiam* order)).[28]

The **Bailets** Court concluded that because the parties articulated

different, but reasonable, definitions of "actual damages," the phrase was

unclear and ambiguous such that it was compelled to examine legislative

intent. **Id.** Thus, the Court examined "the occasion and necessity for the

---

payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages or any combination of these remedies." 43 P.S. § 1425.

[28] We note that although the **Bailets** Court purported to quote the **Springer** decision, it actually quoted from the reporter's synopsis of the trial court's jury charge, and not from the actual **Springer** decision, which was a *per curiam* order. **See Springer**, 46 A. at 372 (beginning of actual decision). The **Bailets** Court also inadvertently cited to the order granting the petition for allowance of appeal for **Joseph v. Scranton Times L.P.**, 105 A.3d 655 (Pa. 2014), and not to the actual **Joseph** decision.

[Whistleblower Law], the circumstances under which it was enacted, the mischief to be remedied, and the object to be attained." *Id.* at 333.

The Pennsylvania Supreme Court in *Bailets* subsequently noted that the intent and goal of the Whistleblower Law was a remedial, protective measure. *Id.* Because its primary purpose was protective in nature, the *Bailets* Court concluded that the Whistleblower Law "must be liberally construed to effect its salutary remedial object." *Id.* In conjunction with caselaw establishing that non-economic losses are actual losses, as well as the other listed items of damages in the Whistleblower Law, the Court held that "actual damages" includes non-economic losses. *Id.*; *accord id.* at 334 (noting "actual damages are synonymous with compensatory damages which, of course, include damages for actual loss").

Finally, we add that for a tort claim involving repairable property damage, it is well-settled that "repair costs (capped by market value) constitute the general measure of damages." *Pa. Dep't of Gen. Servs. v. U.S. Mineral Prods. Co.*, 898 A.2d 590, 607 (Pa. 2006).[29]

---

[29] In contrast, "the general measure of damages for permanent harm to real property is the diminution in market value attributable to the conduct, product, or instrumentality giving rise to liability . . . ." *U.S. Mineral Prods.*, 898 A.2d at 607.

*The Parties' Different Definitions of "Actual Damages" in RESDL*

Initially, RESDL does not define the term "actual damages," and no Pennsylvania case has defined it. We therefore address the parties' differing definitions of "actual damages" in RESDL: Seller argues that the definition should be the lesser of the difference-in-value and cost of repairs, citing **Gadbois**, and Buyer contends the term includes difference-in-value and consequential damages, citing **Skurnowicz** and **Vallies**.

Seller's reliance on **Gadbois** is inapt. In **Gadbois**, the property buyers sued for breach of implied warranty of habitability in contracts to build new homes. **Gadbois**, 458 A.2d at 556. Here, because Buyer raised no such claim, Seller cannot rely on the definition of "actual damages" discussed in **Gadbois**. **See** Compl., 1/8/13, at ¶¶ 4, 9.

Next, we address Buyer's position that "actual damages" includes difference-in-value and consequential damages. Initially, we point out that the **Skurnowicz** Court was asked to resolve the measure of damages for fraudulent misrepresentation—not the measure of damages for a statutory violation of RESDL. **See Skurnowicz**, 798 A.2d at 795 (noting that an aggrieved party has the option of rescinding the real estate sales contract). Thus, **Skurnowicz** is not helpful to Buyer.

Buyer, however, did cite **Vallies.** We acknowledge that although TILA and RESDL have different purposes, both statutes award actual damages for a failure to comply with statutory requirements, such as disclosure of credit

terms for TILA and a disclosure of material defects for RESDL. ***Compare*** 15 U.S.C. § 1640(a), ***with*** 68 Pa.C.S. § 7311. The language of TILA awarding actual damages mirrors the language of RESDL awarding actual damages. ***See*** 15 U.S.C. § 1640(a)(1) ("actual damage sustained by such person as a result of the failure" to disclose); 68 Pa.C.S. § 7311 ("actual damages suffered by the buyer as a result of a violation" of RESDL). Ultimately, the Court of Appeals for the Third Circuit in ***Vallies*** defined "actual damages" as compensation for actual losses—identical to the Pennsylvania Supreme Court's equation of "actual damages" in the Whistleblower Law as synonymous with compensatory damages, which include damages for actual losses. ***See Vallies***, 591 F.3d at 157; ***Bailets***, 181 A.3d at 333-34. Even with the benefit of ***Vallies*** and ***Bailets***, however, it remains unclear as to whether the term "actual damages" in RESDL includes difference-in-value, consequential damages, both, or the lesser of the two. Like the Pennsylvania Supreme Court in ***Bailets***, we examine RESDL's legislative history for guidance. ***See Bailets***, 181 A.3d at 333.

*Legislative History of RESDL*

Our review reveals that the legislative history of RESDL sheds little light on the intended meaning of "actual damages." But the Legislature observed that RESDL "is intended to protect the purchaser of real property, and the method of protection is a disclosure statement that is included within the bill that the seller has to complete so that presumably the buyer accurately knows

what the seller knows about the property when the sale occurs." *See* Pa. Senate Journal 2138, June 18, 1996 (statement of Sen. David J. Brightbill).

Pennsylvania Senator Jake Corman elaborated on the consumer protection purpose of RESDL:

> [RESDL] is an attempt to make it not necessarily, let the buyer beware—always the buyer should beware—but in fact we are asking the sellers to disclose problems that they know exist in their property, and that is all the bill does.  It says if you know there is a problem, then tell us there is a problem so that when we buy your house we know what that is, and if we know upfront and still agree to your price, then we know that the price was worth whatever it is we are willing to pay, and we are also willing to make the remediation necessary to correct the problems that may be wrong with the property.

*Id.* at 2138-39 (statement of Sen. Jake Corman).  In sum, the Pennsylvania Legislature noted that RESDL protects the purchasers of real property and ensures that both parties have some parity of knowledge regarding any issues with the property.  *See id.* (statements of Senators David J. Brightbill and Jake Corman).  Because of RESDL's protective purpose, it must be liberally construed to achieve its remedial goal.  *See Bailets*, 181 A.3d at 333.

*The Definition of "Actual Damages" in RESDL*

For the foregoing reasons, including our recognition of RESDL's protective purpose, and in conjunction with caselaw addressing the measure of repairable property damages in tort cases, *see, e.g.*, *U.S. Mineral Prods.*, 898 A.2d at 607, for purposes of deciding the present case, we conclude "actual damages" in Section 7311 of RESDL for a violation of the requirement to produce a Section 7304 disclosure statement may be determined by the

repair costs, capped by the market value of the property.[30]  The trial court did not err as a matter of law.  *See Nicholas*, 158 A.3d at 688-89.

*Buyer's Second Argument in Support of His First Issue*

Having resolved the definition of "actual damages" in RESDL, we address Buyer's second argument in support of his first issue.  Buyer alternatively argues that even if the trial court correctly defined "actual damages" under RESDL to the costs of repair, the court erred in calculating those damages.  Buyer's Brief at 25.  According to Buyer, the trial court erroneously found that Buyer had not admitted into evidence an exhibit establishing the amount of money to repair the Property's roof.  *Id.* at 25-28.

We agree with Buyer that the trial court erred in its calculation of the amount of repairable damages.  The trial court overlooked that Exhibit 9, which provided an estimate to repair the roof, was admitted without objection.  *See* R.R. at 182a.  The trial court thus erred when it believed that Buyer failed to move that exhibit into evidence.  *See Nicholas*, 158 A.3d at 688-89.  We

---

[30] We note that Buyer did not argue that it was entitled to difference-in-value and consequential damages under 68 Pa.C.S. § 7311(a).  *See* 68 Pa.C.S. § 7311(a) ("This subsection shall not be construed so as to restrict or expand the authority of a court to impose punitive damages or apply other remedies applicable under any other provision of law.").  Thus, absent counseled argument, we do not address it.  We add that no party has claimed that the property damage was unrepairable and thus permanent.  Finally, because of our resolution, we need not address Buyer's assertion that the trial court improperly rejected Woof's testimony on difference-in-value damages.

therefore instruct the trial court on remand to recalculate the amount of actual damages, which should include consideration of Exhibit 9.

### Buyer's Second and Third Issues - UTPCPL and Fraudulent Misrepresentation

We need not summarize Buyer's arguments in support of his second and third claims except to note that Buyer has requested that this Court enter judgment in his favor for his UTPCPL and fraudulent misrepresentation claims. Buyer's Brief at 38. We reiterate that Buyer, during trial, failed to move for a directed verdict before filing a post-trial motion requesting that the trial court enter judgment in his favor. *Id.*; *see also* Buyer's Post-Trial Mot., 5/12/17, at 4-8 (requesting that the trial court enter judgment in Buyer's favor on these two claims).

By way of background, "[p]ost-trial relief may not be granted unless the grounds therefore, if available, were raised by an appropriate method at trial." *Phillips v. Lock*, 86 A.3d 906, 918 (Pa. Super. 2014) (citing Pa.R.C.P. 227.1(b)(1)). "[T]o preserve the right to request a JNOV post-trial, a litigant must first request a binding charge to the jury or move for a directed verdict or a compulsory non-suit at trial." *Youst v. Keck's Food Serv., Inc.*, 94 A.3d 1057, 1071 (Pa. Super. 2014) (citation and brackets omitted). "[T]his approach has the salutary effect of submitting the issue to the trial judge for initial evaluation during trial, when the proofs are still fresh, and is consistent with past practice and with" Pa.R.C.P. 227.1(b)(1). *Commonwealth v. U.S. Mineral Prods. Co.*, 927 A.2d 717, 725 (Pa. Cmwlth. 2007); *see also*

Pa.R.C.P. 227.1(b)(1) cmt. ("A ground for a new trial or a judgment notwithstanding the verdict may **not** be raised for the first time in the Motion for Post-Trial Relief." (emphasis added)).[31]  A motion for a directed verdict is appropriate even in non-jury cases.  **See Nikole, Inc. v. Klinger**, 603 A.2d 587, 593-94 (Pa. Super. 1992).[32]

Here, Buyer did not move, either orally or in writing, for a directed verdict on any of his claims.  It was only **after** the trial court rendered its adverse decision that Buyer, in his post-trial motion, first raised his request for judgment notwithstanding the court's decision.  Buyer's Mot. for Post-Trial Relief, 5/12/17, at 8.  Buyer, therefore, failed to properly preserve his right to request judgment notwithstanding the court's decision.  **See** Pa.R.C.P. 227.1(b)(1) & cmt.; **Youst**, 94 A.3d at 1071; **Phillips**, 86 A.3d at 918. Buyer's failure before the trial court, therefore, precludes him appellate relief for his UTPCPL and fraudulent misrepresentation claims.

---

[31] **See generally** 10 Standard Pa. Practice 2d § 64.2 (stating, "it is a prerequisite to the entry of JNOV that the party making the request for such posttrial relief has made a request for . . . a motion for a directed verdict at trial." (footnote to citations omitted)).  The reason is that "a party's request for JNOV cannot be granted in a situation where the [trial] court could not have directed a verdict for that party."  **Id.** (footnote to citation omitted).

[32] Judges presiding over a bench trial render decisions; juries render verdicts. **See Sands v. Andino**, 590 A.2d 761, 764 (Pa. Super. 1991).

In sum, for the appeal at 873 MDA 2017, we affirm in part and reverse in part the trial court's order denying Buyer's post-trial motion, and remand for the limited purpose of recalculating Buyer's actual damages for violating the disclosure requirement of RESDL.[33]  For the cross-appeal at 923 MDA 2017, we affirm the order granting partial summary judgment in favor of Buyer on his RESDL claim.

Judgment vacated.  Order denying Buyer's post-trial motion affirmed in part and reversed in part.  Case remanded.  Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/18/2018

_____

[33] It is well-settled that a trial court cannot consider issues outside the scope of a remand order.  *See Commonwealth v. Williams*, 877 A.2d 471, 475 (Pa. Super. 2005).