J-A28018-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KATHLEEN NICHOLAS-GOULD | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES P. MCDONALD, JR. AND | : | |
| SUSANNE MCDONALD | : | |
| | : | |
| | : | No. 1009 EDA 2022 |
| Appellants | : | |

Appeal from the Judgment Entered March 14, 2022
In the Court of Common Pleas of Bucks County Civil Division at No(s):
2018-06816

BEFORE:  PANELLA, P.J., LAZARUS, J., and SULLIVAN, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED FEBRUARY 7, 2023**

Charles P. McDonald, Jr., and Susanne McDonald (h/w) (collectively, the McDonalds/Sellers) appeal from the judgment, entered on the non-jury verdict in the Court of Common Pleas of Bucks County, in favor of Appellee Kathleen Nicholas-Gould (Buyer) in the amount of $69,459.30, in this residential real estate case.  After careful review, we affirm on the basis of the opinions authored by the Honorable Robert O. Baldi.

On March 11, 2018, the parties executed an agreement of sale, in the amount of $480,000.00, for property (Property) located at 3912 Street Road[1] in Buckingham Township, Bucks County.  Sellers had purchased the Property in November 2005 and made extensive improvements to it, including

_____

[1] The home was approximately 50 years old at the time of the sale.

removing a lower portion of the wall in the corner bedroom in 2013, as well as converting the garage into a family room in or around 2007.

On February 22, 2018, Sellers executed a Real Estate Disclosure Statement (Disclosure Statement) that included, among other things, the following averments:

- Sellers "were not aware of any past or present movement, shifting, deterioration, or other problems with walls, foundations, or other structural components[;]"

- Sellers "were not aware of any past of present problems with driveways, walkways, patios, or retaining walls on the property[;]"

- Sellers "were not aware of any past or present water infiltration in the house or other structures, other than the roof, basement[,] or crawl spaces."

Seller's Property Disclosure Statement, 2/22/18, at ¶¶ 7(A), (B), & (C).   On March 11, 2018, Buyer reviewed the Disclosure Statement and testified that based on the Disclosure Statement she believed that there were no structural problems with the Property.  N.T. Non-Jury Trial, 10/6/20, at 34.   Finally, Buyer testified that she relied upon the representations in the Disclosure Statement when she decided to purchase the Property.  *Id.* at 32.

Buyer hired a company to inspect the Property prior to closing.  The inspector issued a report, dated March 16, 2018, listing items in/on the Property that needed corrective work.   In particular, the inspection report noted that there were material defects with regard to the roof drainage system (a defective rain gutter/downspout) and the chimney (placement of right roof framing member).  *See* Inspection Report by Steve Maurer of Maurer

Inspections, LLC, 3/16/18, at 4.[2]   The inspection report also noted that everything "appeared functional" in the interior of the Property, except for certain steps, stairways, balconies, and railings, which Mr. McDonald subsequently fixed.  The remaining problem items were either addressed or waived by the parties prior to settlement.[3]

The parties made settlement on the Property on April 30, 2018.[4] Following settlement, Buyer "discovered that the Property was riddled with numerous undisclosed material defects that were neither readily observable nor discoverable by [Buyer's] inspector," including, but not limited to, a deteriorated and failing front wall on the main level, basement and crawlspace flooding, cracked floor tiles in the family room, deteriorating masonry on the outside front of the home, and a failing split-rail backyard fence.  Complaint, 11/26/18, at ¶¶ 23-45.  In particular, Buyer discovered that the front wall of one of the bedrooms was bulging and that water was seeping through the paint.  When Buyer cut open a portion of that wall, she found that the studs

---

[2] The inspection report also noted that further evaluation by a qualified chimney sweep was required to assess the condition of the chimney's flues and vents as the interior chimney and furnace flues could not be inspected because that was "beyond the scope of a home inspector." *Id.*

[3] A $3,500.00 adjustment in favor of Buyer was applied to the final purchase price of the Property to account for the cost to repair some of the problems noted in the inspection report.

[4] The parties stipulated that the closing date of the sale was April 30, 2018.

were so deteriorated from water damage that new studs had been "sistered"[5] to the old studs to prevent the wall from completely falling down. In addition, Buyer noticed that pieces of wood and insulation inside the wall were moist and contained dark spots/mold, that the drywall or plasterboard was destroyed, and that the masonry was crumbling.

On November 26, 2018, Buyer filed a complaint against Sellers alleging violations of the Real Estate Seller Disclosure Act (RESDL)[6] and the Unfair Trade Practices and Consumer Protection Act (UTPCPL).[7] In her complaint, Buyer requested treble damages, as well as attorneys' fees and costs. Sellers filed an answer, new matter, and counterclaim asserting breach of contract.[8]

Following a three-day non-jury trial, held in October 2020,[9] Judge Baldi found in favor of Buyer, concluding that Sellers' failure to disclose material

---

[5] "A sister stud is a secondary stud that is installed alongside an existing stud. It is usually used to reinforce a stud that has been damaged or is bowed in a manner that compromises its load-bearing capacity." https://knowledgeburrow.com/what-does-sistering-mean-in-construction/#:~:text=What%20does%20Sistering%20mean%20in%20construction%3F%20A%20sister,in%20a%20manner%20that%20compromises%20its%20load-bearing%20capacity. (last visited 12/28/23).

[6] 68 Pa.C.S.A. §§ 7301-14.

[7] 73 P.S. § 201-1, *et seq*.

[8] The parties jointly stipulated to the following: Buyer will withdraw a claim for negligence and Sellers will withdraw their counterclaims for loss of the bargain and for attorneys' fees.

[9] On the second day of trial, Mrs. McDonald testified that she adopted her husband's testimony as her own. N.T. Non-Jury Trial, 10/7/20, at 99.

defects—specifically, moisture damage and deterioration of the front wall of the Property that extended from a corner bedroom to the family room—constituted a violation of the RESDL and the UTPCPL.[10] The trial judge awarded Buyer $50,940.00 in compensatory damages[11] to cover the costs to repair the deteriorating walls.

On July 20, 2021, Sellers filed a post-trial motion, which the court subsequently denied. Buyer filed a post-trial petition seeking attorneys' fees and costs under the UTPCPL;[12] Sellers filed an answer opposing the petition. On March 7, 2022, the trial court granted Buyer's petition, awarding Buyer $14,838.50 in attorneys' fees and $3,680.80 in costs. *See* 73 P.S. § 201.9.2 (statute authorizing recovery of "reasonable" attorneys' fees and costs for violation of UTPCPL).

---

[10] The court specifically found that Sellers reasonably believed that their installation of a second sump pump corrected any significant flooding issues in the Property's basement and crawl space and, thus, Buyer could not recover for Sellers' alleged failure to disclose this issue. The court also found that Buyer could not recover for alleged flooding in the yard of the Property where no evidence was presented at trial to show that the flooding had a significant impact on the value of the Property or that it involved an unreasonable risk to people on the Property. Finally, the court found that Buyer could not recover on the failing split-rail fence or deteriorating masonry on the front of the home. *See* Trial Court Opinion, 7/1/21, at 21.

[11] Although permissible under the UTPCPL, the court declined to award treble damages.

[12] The parties stipulated that any request that Buyers may have for attorneys' fees under the UTPCPL would be heard via post-trial motions without the need for expert testimony as it relates to the reasonableness of attorney rates.

Sellers filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Sellers present the following issues for our consideration:

(1)     Whether the [trial c]ourt improperly relied on testimony that the parties and the [trial c]ourt stipulated could not be used to establish liability[.[13]]

(2)     Whether there was sufficient competent evidence introduced at trial that the [Sellers] were aware of any material defects in the front bedroom wall[.]

(3)     Whether there was sufficient competent evidence that the [Sellers'] statement that they were not aware of any material defects in the front bedroom wall were false, deceptive, and misleading[.]

(4)     Whether there was sufficient competent evidence to support actual damages in the amount of $50,940.00[.]

(5)     Whether the [trial c]ourt erred in applying the UTPCPL to this case because the [Sellers] are individual consumers that were [not] and are not in the business of selling homes.

Appellants' Brief, at 7.

> Upon appeal of a non-jury trial verdict, an appellate court considers the evidence in a light most favorable to the verdict winner and will reverse the trial court only if its findings of fact lack the support of competent evidence or its findings are premised on an error of law. When an appellate court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected. The court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support

---

[13] Sellers did not preserve this issue in post-trial motions. Thus, it is waived on appeal. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived.").

- 6 -

or that the court capriciously disbelieved the evidence. It is inappropriate for an appellate court to make factual determinations in the face of conflicting evidence.

*Phelps v. Caperoon*, 190 A.3d 1230, 1243 (Pa. Super. 2018) (citation omitted).

With regard to issues two and four, Buyer's expert witness concluded that water infiltration, not termites as alleged by Sellers, was the cause of damage to the Property's walls and that the way to remedy the damage was to reframe the walls and entirely replace the masonry. *See* N.T. 10/7/20, at 12-15, *id.*, 10/6/20, at 221-22 (expert testifying sill plate, joists of house, and studding in front walls were "rotted"); *id.* at 22-23 (expert testifying no vapor barrier in front walls to keep moisture from seeping through exterior stone). Buyer's contractor testified that a "reasonable and appropriate" cost to reframe the front walls would be $50,940.00 ($15,260.00 (bedrooms walls) and $35,680.00 (family room/garage wall)). *Id.*, 10/7/20, at 20-21; *see* Plaintiff's Exhibit 15, at 1-2.

With regard to issue number three, Mr. McDonald admitted at trial that, in 2013, he opened up the front wall to replace the lower portion of drywall and, in the process, "sistered" new studs to the old studs. *Id.*, 10/7/20 at 67-68; *id.* at 85 (Seller testifying inside corner bedroom wall, "There was a stud that was a little chewed up[.]"). Mr. McDonald also testified that the drywall inside the wall was "cracked and falling down." *Id.*, 10/8/20, at 72-73. Finally, Mr. McDonald testified that when the Property's garage was

converted to a family room, he observed the week-long construction process

"about three or four times." *Id.*, 10/7/20, at 78.

With regard to Sellers' final issue, we note that the UTPCPL provides for

a private cause of action.

> The UTPCPL is Pennsylvania's consumer protection law, which serves the purpose of protecting the public from unfair or deceptive business practices. *DeArmitt* [*v. N.Y. Life Ins. Co.*, 73 A.3d 578, 587 (Pa. Super. 2013)]. The UTPCPL explicitly authorizes a private cause of action for anyone who purchases goods primarily for personal, family, or household purposes and "suffers any ascertainable loss of money or property" as a result of any person employing an unlawful method, act, or practice. 73 P.S. §201-9.2(a).
>
> In order to bring a private cause of action under the UTPCPL, "a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." *Yocca v. Pittsburgh Steelers Sports, Inc.*, [] 854 A.2d 425, 438 (Pa. 2004) (emphasis added). Strict technical privity is not required to bring a cause of action under the UTPCPL. *Valley Forge Towers Smith Condominium v. Ron-Ike Foam Insulators, Inc.*, [] 574 A.2d 641, 647 (Pa. Super. 1990).

*Zajick v. Cutler Grp., Inc.*, 169 A.3d 677, 680 (Pa. Super. 2017).[14]

---

[14] Specifically, section 201-3 of the UTPCPL creates a private cause of action in the following circumstances:

> (a) **Any person who purchases** or leases **goods** or services **primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages** or one hundred dollars ($ 100), whichever is greater. The court may, in its discretion, award up to three times the

*(Footnote Continued Next Page)*

After examining the parties' briefs, the issues on appeal, and relevant statutory and case law, we affirm the court's judgment. In doing so, we rely upon the thorough and well-written opinions authored by Judge Baldi. **See** Pa.R.A.P. 1925(a) Opinion, 6/10/22, at 5-10; Trial Court Opinion, 7/1/21.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/7/2023

---

> actual damages sustained, but not less than one hundred dollars ($ 100), and may provide such additional relief as it deems necessary or proper. **The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.**

73 P.S. § 201-9.2(a) (emphasis added). Under section 3 of the UTPCPL "unlawful acts or practices" are defined as "unfair methods of competition and unfair or deceptive acts of practices in the context of any trade or commerce as defined by subclauses (i) through (xxi) of clause (4) of section 2 of this act and regulations promulgated under section 3.1 of this act[.]" *Id.* at § 201-3. The UTPCPL prohibits "engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." *Id.* at 201-2(4)(xxi). *See Gregg v. Ameriprise Fin., Inc.,* 245 A.3d 637 (Pa. 2021) (UTPCPL's 1997 amendment created "catch all" provision that expanded its scope to cover not just "fraudulent" but also "deceptive" conduct; statute requires neither intent to deceive nor negligence with regard to effect of misrepresentation).