J-A23025-20

2021 PA Super 73

| | | |
|---|---|---|
| WANDA AND DAVID MAZZIE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEHIGH VALLEY HOSPITAL - | : | |
| MUHLENBERG, GERARDO M. | : | |
| GARCIA, M.D., AND LEHIGH VALLEY | : | No. 473 EDA 2020 |
| PHYSICIANS GROUP | : | |
| | : | |
| Appellants | : | |

Appeal from the Order Entered December 31, 2019
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
No. 2016-C-2523

BEFORE:   KUNSELMAN, J., NICHOLS, J., and PELLEGRINI, J.*

OPINION BY NICHOLS, J.:                    **FILED:  APRIL 16, 2021**

Appellants Lehigh Valley Hospital—Muhlenberg (LVHM), Gerardo M. Garcia, M.D. (Dr. Garcia), and Lehigh Valley Physicians Group appeal from the order granting Appellees Wanda and David Mazzie (individually, Mrs. Mazzie and Mr. Mazzie) post-trial relief in this medical malpractice action.  Appellants allege that the trial court erred in: (1) granting a new trial limited to damages; (2) substituting its judgment for the jury and usurping the jury's verdict with respect to non-economic damages; (3) disregarding the jury's role in assessing the testimony presented at trial; and (4) denying its request for judgment notwithstanding the verdict (JNOV) and its cross-motion.  We affirm.

_____

* Retired Senior Judge assigned to the Superior Court.

On September 8, 2014, Mrs. Mazzie underwent laparoscopic surgery to repair an incisional hernia, related to a prior hysterectomy, and an umbilical hernia. Dr. Garcia performed the surgery at LVHM. Following the laparoscopic surgery, Mrs. Mazzie was discharged from LVHM and transported to Manor Care Easton on September 12, 2014. A couple of days later, however, she returned to LVHM with septic shock and was rushed to the operating room. As a result of the infection, Mrs. Mazzie was put into a medically induced coma, and underwent numerous additional surgical procedures necessary to save her life.

On September 1, 2016, Appellees initiated the instant medical negligence action against Appellants by filing a writ of summons. Thereafter, Appellees filed their complaint on November 17, 2016. As developed following a series of preliminary objections and amended complaints, Appellees alleged that Mrs. Mazzie suffered post-operative complications because Dr. Garcia negligently pierced Mrs. Mazzie's bowel during surgery.[1] On August 15, 2017, Appellants filed an answer and new matter.

Before trial, Appellants filed several motions *in limine* seeking to preclude evidence of Mrs. Mazzie's wage loss claim and evidence of future medical expenses. On August 15, 2019, the trial court granted the motions *in limine* as unopposed. Accordingly, the relevant issues for trial were: (1)

_____

[1] Appellees also claimed Mr. Mazzie suffered damages for loss of consortium; however, the jury rejected this claim. Appellees have not sought a new trial on Mr. Mazzie's loss of consortium claim.

- 2 -

liability based on Dr. Garcia's negligence; (2) causation; (3) compensatory damages limited to Mrs. Mazzie's medical expenses, which were stipulated to by her counsel as $39,000.00; and (4) Mrs. Mazzie's pain and suffering.

The case proceeded to a jury trial. At the close of trial, Appellants orally moved for compulsory non-suit, which the trial court denied. After deliberations, the jury determined Dr. Garcia acted negligently in performing Mrs. Mazzie's abdominal surgery and awarded her past medical expenses of $39,000.00. However, the jury declined to award Mrs. Mazzie non-economic damages for pain and suffering.

On September 5, 2019, Appellees filed a post-trial motion seeking a new trial on damages. Appellants filed their response to Appellees' post-trial motion on September 13, 2019, and also filed a cross-motion for JNOV. Following oral argument, the trial court granted Appellees' motion and ordered a new trial limited to the issue of damages. The trial court denied Appellants' cross-motion for post-trial relief.

Appellants filed a timely notice of appeal and complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).[2]

On appeal, Appellants raise the following issues:

1. Whether the trial court erred in denying LVH's request for [JNOV] where . . . Appellees' sole medical expert, Dr. Peter

_____

[2] "An order in a civil action or proceeding awarding a new trial" is an interlocutory order appealable as of right. Pa.R.A.P. 311(a)(6). Therefore, we have jurisdiction to address the merits of this appeal.

Mowschenson, did not support his opinions to the requisite degree of medical certainty?

2. Whether the trial court erred in granting Appellees' motion for post-trial relief for a new trial limited to damages only where the trial record shows that the jury reached a compromise verdict?

3. Whether the trial court erred by substituting its judgment for the jury, and usurping the jury's verdict which was supported by the evidence, because the trial court did not agree with the amount of the jury's award which declined to award damages for pain and suffering to Mrs. Mazzie?

4. Whether the trial court erred by disregarding well-settled Pennsylvania law which holds that it is the sole province of the jury to assess the worth of all testimony presented?

Appellants' Brief at 6-7 (issues reordered).

Appellants first argue that the trial court should have granted their motion for JNOV because Appellees' medical expert, Dr. Peter Mowschenson, M.D., failed to render his opinion to the requisite degree of medical certainty. *See id*. at 46. Appellants allege that the totality and substance of Dr. Mowschenson's testimony was that it was "more likely than not" that Dr. Garcia negligently performed Mrs. Mazzie's abdominal surgery. *See id*. at 48-50. Appellants therefore assert that Dr. Mowschenson's testimony fell below the "reasonable degree of medical certainty" standard, thereby warranting JNOV in their favor. *See id*. at 50, 54-55.

Appellees counter that Appellants failed to preserve their right to seek JNOV. Appellees contend that Appellants did not raise a contemporaneous objection to Dr. Mowschenson's testimony at trial and therefore waived this claim. Appellees' Brief at 39-40.

However, even if Appellants properly preserved this issue, Appellees argue that it would fail nonetheless. Appellees claim that contrary to Appellants' assertion, Dr. Mowschenson did in fact testify, to a reasonable degree of medical certainty, that Dr. Garcia negligently performed Mrs. Mazzie's surgery. *Id.* at 36. According to Appellees, it was clear from the record that Dr. Mowschenson testified to an absolute certainty that the use of a Veress needle in the area of prior scarring was a violation of the standard of care. *Id.* at 37. Furthermore, Appellees argue that Appellants "conflate Dr. Mowschenson's opinions as to whether the use of a Veress needle in an area of prior surgery was a violation of the standard of care, with his opinions regarding whether . . . adhesions were present where the prior surgery had occurred." *Id.* at 34. Therefore, Appellees contend that Appellants were not entitled to JNOV at the close of evidence.

Our review is governed by the following well-settled principles:

[a] JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. [In doing so], we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. [With regard to] questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the jury could have properly made

its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.

**Buckley v. Exodus Transit & Storage Corp.**, 744 A.2d 298, 304-05 (Pa. Super. 1999) (citations omitted).

Initially, we must address Appellees' argument that Appellants failed to preserve their right to seek JNOV.[3] **See** Appellees' Brief at 39-40. "[T]o preserve the right to request a JNOV post-trial, a litigant must first request a binding charge to the jury or move for a directed verdict or a compulsory non-suit at trial." **Phelps v. Caperoon**, 190 A.3d 1230, 1247 (Pa. Super. 2018) (citation omitted). Failure to do so may result in waiver. **See id.**

Here, Appellants moved, orally, for a compulsory non-suit at the close of trial. **See** N.T. Trial, 8/29/19, at 39. Therefore, we conclude that Appellants preserved their JNOV rights on the issue of Dr. Mowschenson's expert testimony and proceed now to the merits of Appellants' first claim. **See Phelps**, 190 A.3d at 1247.

To establish a *prima facie* cause of action for medical negligence, a plaintiff must demonstrate:

> (1) a duty owed by the physician to the patient; (2) a breach of that duty; (3) that the breach of duty was the proximate cause of the harm suffered by the patient; and (4) that the damages suffered were a direct result of that harm.

---

[3] We note that Appellees cite no law to support their argument that a contemporaneous objection to the witness's testimony is a precondition for seeking JNOV.

*Mitchell v. Shikora*, 209 A.3d 307, 314 (Pa. 2019) (citation omitted). Determining whether there was a breach of duty involves a two-step process: first, a determination of the standard of care, and second, a determination of whether the defendant physician met that standard. *See Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1149 (Pa. 2003). To show causation, "the plaintiff must show that the [defendant physician's] failure to exercise the proper standard of care caused the plaintiff's injury." *Freed v. Geisinger Medical Center*, 910 A.2d 68, 72 (Pa. Super. 2006) (citation omitted).

A plaintiff in a medical negligence case must present an expert witness "who will testify, to a reasonable degree of medical certainty, regarding the standard of care (duty); that the . . . physician deviated from the standard of care (breach); and that such deviation was the proximate cause of the harm suffered." *Mitchell*, 209 A.3d at 315 (citation omitted). Further, "[the expert's] medical opinion need only demonstrate, with a reasonable degree of medical certainty, that [the defendant physician's] conduct increased the risk of the harm actually sustained, and the jury then must decide whether that conduct was a substantial factor in bringing about the harm." *Rolon v. Davies*, 232 A.3d 773, 777 (Pa. Super. 2020) (citation omitted).

> In determining whether the expert's opinion is rendered to the requisite degree of certainty, we examine the expert's testimony in its entirety. That an expert may have used less definite language does not render his entire opinion speculative if at some time during his testimony he expressed his opinion with reasonable certainty. Accordingly, an expert's opinion will not be deemed deficient merely because he or she failed to expressly use the specific words, "reasonable degree of medical certainty." Nevertheless, an expert fails this standard of certainty if he

testifies that the alleged cause possibly, or could have led to the result, that it could very properly account for the result, or even that it was very highly probable that it caused the result.

***Vicari v. Spiegel***, 936 A.2d 503, 510-11 (Pa. Super. 2007) (citations omitted and formatting altered).

Having reviewed Dr. Mowschenson's testimony in its entirety, the trial court concluded that Appellants were not entitled to JNOV based on the testimony of Appellees' expert witness. The trial court stated that

> [Dr. Mowschenson's] opinions regarding negligence and causation [were] expressed to the requisite degree of medical certainty. The exchange on cross-examination[,] highlighted by [Appellants, was] not fatal to Dr. Mowschenson's testimony and it cannot be viewed in isolation. On [direct examination], Dr. Mowschenson's testimony was unequivocal; he clearly opined that Mrs. Mazzie's prior history of abdominal surgeries [was] an absolute contraindication for insertion of the Veress needle into the area of the umbilical hernia. Dr. Mowschenson also vehemently disagreed with the opinions of [Appellants'] expert, Dr. [Matthew] Finnegan [, M.D.] and confirmed on re-direct examination that his opinions had not changed.

Trial Ct. Op., 12/31/19, at 20 (citation omitted).

Our review of the record confirms that Dr. Mowschenson testified, to a reasonable degree of medical certainty, that Dr. Garcia deviated from acceptable medical standards when he used a Veress needle to repair Mrs. Mazzie's incisional and umbilical hernias. N.T. Trial, 8/27/19, at 112. Dr. Mowschenson also testified that such deviation was the proximate cause of Mrs. Mazzie's post-operative injuries. ***See id***. at 103, 105.

On direct examination, Dr. Mowschenson testified that Mrs. Mazzie had a history of abdominal surgeries that left her with abdominal adhesions. ***See***

*id.* at 83.  The presence of adhesions, according to Dr. Mowschenson, increased the risk of injury to the abdominal cavity.  *See id*. at 86.  Appellees' counsel asked Dr. Mowschenson whether "using the Veress needle through the umbilical hernia, was . . . a violation of the standard of care of a general surgeon," and Dr. Mowschenson went on to testify:

> It was.  I teach my residents, and I was taught this as well, . . . that the Veress needle must not be used in an area where there's a prior incision or near an area of a prior incision for exactly the reasons that happened here. . . .

*Id*. at 87-88.

> Dr. Mowschenson further explained that:

> [i]t is contraindicated to insert a Veress needle . . . near a scar from [a] prior surgery.  And [, in this case, the] Veress needle was put very close to a scar from [Mrs. Mazzie's] prior surgery.  [T]he evidence for that is . . . when Dr. Garcia looked inside, he said beginning just below the umbilicus were adhesions.

*Id*. at 112.  Appellees' counsel then asked Dr. Mowschenson, once more, whether Dr. Garcia's use of the Veress needle was a deviation from the standard of care, and Dr. Mowschenson responded, "Yes."  *Id.*

Although Dr. Mowschenson did not use the exact phrase, "reasonable degree of medical certainty," his opinions, as stated above, were rendered to that degree of certainty.  *See Vicari*, 936 A.2d at 509.  Throughout his testimony, Dr. Mowschenson was steadfast in his opinion that Dr. Garcia negligently performed Mrs. Mazzie's lower abdominal surgery and that his negligence was a factual cause of her post-operative injuries.  *See* N.T. Trial,

8/27/19, at 103, 105, 112. While Appellants emphasize that Dr. Mowschenson used the phrase "more likely than not" on cross-examination in response to questions about Dr. Garcia's alleged negligence, the totality of Dr. Mowschenson's testimony revealed that his opinions were rendered to the requisite degree of certainty. *See Carrozza v. Greenbaum*, 866 A.2d 369, 379 (Pa. Super. 2004) ("That an expert may have used less definite language does not render their entire opinion speculative if at some time during his testimony he expressed his opinion with reasonable certainty." (citation omitted)). Moreover, because the testimony, considered in its entirety, was sufficient to send the case to the jury, it would have been improper for the trial court to grant Appellants' motion for non-suit. *See Vicari*, 936 A.2d at 512. Accordingly, Appellants' first issue merits no relief.

Appellants' remaining issues assert that the trial court erred in granting Appellees a new trial on damages for pain and suffering. *See* Appellants' Brief at 22, 34-35, 38-39. Specifically, Appellants claim that the jury's verdict of zero dollars for non-economic damages was a determination that Mrs. Mazzie's pain and suffering was not attributable to Dr. Garcia's alleged negligence. *See id.* at 24-30. According to Appellants, "there was significant testimony demonstrating that Mrs. Mazzie's alleged pain and suffering (1) was not directly related to the aftermath of the hernia surgery; and (2) was attributable to her pre-existing conditions." *Id.* at 31. Appellants further contend that the jury's award, limited to medical expenses, represented a compromise verdict, which should not be disturbed. *See id.* at 34.

Appellees respond that the trial court did not abuse its discretion in ordering a new trial on the issue of damages. *See* Appellees' Brief at 4. Appellees argue that the jury did not render a compromise verdict, as evidenced by the jury resolving issues of negligence and causation in favor of Mrs. Mazzie and awarding the full stipulated amount of medical damages. *See id*. at 8, 20. Appellees contend that the jury's award of zero dollars for non-economic damages shocked the conscience based on the evidence of Mrs. Mazzie's pain and suffering, and therefore required a new trial limited to damages. *See id*. at 26-32.

In *Mader v. Duquesne Light Co.*, 241 A.3d 600, 607 (Pa. 2020), our Supreme Court set forth our standard of review from a trial court's grant or denial of a new trial:

> It is a fundamental precept that a decision to order a new trial lies within the discretion of the trial court. Thus, it is [well-settled] that the proper standard of appellate review is determining whether the trial court abused its discretion. [O]ur Court explained the process of reviewing a motion to grant or deny a new trial. First, the underlying matter that formed the basis for the trial court's decision is to be reviewed – that is, whether a mistake occurred and whether that mistake was sufficient to order a new trial. If the appellate court agrees with the trial court that an error occurred, it proceeds to determine whether the trial court abused its discretion in ruling on the request for a new trial. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. Merely because an appellate court would have reached a different result than the trial court does not constitute a finding of an abuse of discretion. Also, where the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion.

> As to our scope of review, if the trial court cites to specific reasons for its decision on a request for a new trial, and it is clear that the decision of the trial court is based exclusively on those reasons, the appellate court may reverse the trial court's decision only if it finds no basis on the record to support any of those reasons. Alternatively, where the trial court leaves open the possibility that there were reasons to grant or deny a new trial other than those it expressly offered, or the trial court justifies its decision on the interests of justice, an appellate court must apply a broad scope of review and affirm if it can glean any valid reason from the record.

*Mader*, 241 A.3d at 607 (citations omitted and formatting altered).

As we have stated previously, a trial court may grant a new trial where "the original trial, because of taint, unfairness or error, produces something other than a just and fair result." *Koziar v. Rayner*, 200 A.3d 513, 518 (Pa. Super. 2018) (citation omitted). The grant of a new trial is an effective instrumentality in cases where "the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff." *Kiser v. Schulte*, 648 A.2d 1, 4 (Pa. 1994) (citations omitted). As such, where "the jury's verdict is so contrary to the evidence as to 'shock one's sense of justice,'" a trial court should not hesitate to set aside the verdict and award a new trial. *See id.* (citation omitted).

A trial court has the discretion to either grant a new trial for both damages and liability or for damages only. *See Mader*, 241 A.3d at 614; *see also* Pa.R.C.P. 227.1(a)(1). In determining whether a new trial should be granted solely for damages, or for damages and liability, our Supreme Court in *Mader* declared that:

[a] new trial limited to the issue of damages will be granted where: (1) the issue of damages is not intertwined with the issue of liability; and (2) where the issue of liability has been fairly determined or is free from doubt.

*Mader*, 241 A.3d at 614 (citation omitted and formatting altered). The *Mader* Court also held that "there is no *per se* rule with respect to the types of damages to be considered at a new trial, and that trial courts are not mandated to award a new damages trial on all damages." *Id.* at 615. Furthermore, when faced with the question of granting a new trial for all damages or for certain types of damages, a trial court should "discern whether the properly awarded damages in the first trial were fairly determined, and, if so, whether they are sufficiently independent from, and are not intertwined with, the erroneously determined damages." *Id.* (formatting altered).

In determining whether the trial court abused its discretion in awarding a new trial, we must examine the underlying mistake and whether the reasons offered by the trial court in ordering a new trial based on this mistake constituted an abuse of discretion. *See Mader*, 241 A.3d at 615.

Here, as stated above, the trial court granted a new trial because of the jury's failure to award Mrs. Mazzie damages for pain and suffering. In doing so, the trial court reasoned that:

Human experience teaches us that Mrs. Mazzie's injuries are of the type that cause pain and suffering. She underwent numerous surgical procedures on her abdomen, she lost a tooth and sustained damage to her dominant hand. Moreover, non-economic damages encompass more than just pain and suffering; they also encompass loss of ability to enjoy the pleasures of life. Unquestionably, Mrs. Mazzie was unable to enjoy any of the pleasures of life while in a six week medically induced coma . . .

- 13 -

Thereafter, Mrs. Mazzie spent several months in rehabilitation centers relearning basic skills with her left hand and strengthening her weakened muscles. She lost her independence and had to rely on the support of family members. All of this together clearly demonstrates that there was no reasonable basis for the jury to believe that Mrs. Mazzie's injuries caused no pain and suffering.

Trial Ct. Op., 12/31/19, at 11-12.

The trial court further reasoned that:

Although the issue of Dr. Garcia's liability was contested at trial, that issue was presented to the jury through competing expert witnesses regarding the appropriate standard of care. The jury was free to evaluate the believability of each expert along with the rest of the evidence presented. This is simply not a case where the issues of liability and damages are intertwined. The jury's affirmative resolution of negligence and causation in favor of Mrs. Mazzie does not suggest that their decision on liability was in doubt. Any other conclusions by [the court] would be based purely on speculation and conjecture.

*Id*. at 13 (quotation marks and footnotes omitted).

Having reviewed the record, we agree with the trial court that Mrs. Mazzie suffered serious post-operative injuries and underwent subsequent surgical procedures as a direct result of these injuries. Mrs. Mazzie developed abdominal pain, abdominal distension, and a fever following her September 8, 2014 surgery. *See* N.T. Trial, 8/28/19, at 32-36, 117, 122. As her post-operative condition worsened, Mrs. Mazzie was transported to the emergency room and resuscitated with intravenous fluids and antibiotics. *See* N.T. Trial, 8/29/19, at 112. She was eventually rushed to the operating room, where she underwent emergency surgery to repair her perforated bowel. *See id*.

- 14 -

Thereafter, Mrs. Mazzie was transferred to the hospital's intensive care unit and placed in a medically induced coma. *See* N.T. Trial, 8/28/19, at 42-46.

Although Mrs. Mazzie suffered from various pre-existing conditions, Appellants' medical expert, Dr. Matthew Finnegan, M.D., conceded that Mrs. Mazzie suffered serious post-operative injuries. In particular, Dr. Finnegan testified that Mrs. Mazzie developed peritonitis—a severe infection in the abdomen—as a result of the bowel perforation. *See* N.T. Trial, 8/29/19, at 148. He also testified that Mrs. Mazzie aspirated the contents from her stomach into her lungs during intubation which ultimately caused serious lung damage. *See id.* at 112. Finally, when Appellees' counsel asked Dr. Finnegan whether Mrs. Mazzie was on death's door, he responded, "Yes." *Id.* at 148.

Accordingly, the record supports the jury's finding that Dr. Garcia negligently performed Mrs. Mazzie's lower abdominal surgery and that his negligence was a factual cause of her post-operative injuries.

Based on the aforementioned discussion, we find that liability was fairly determined and that it was not intertwined with damages. *See Banohashim v. R.S. Enters., LLC*, 77 A.3d 14, 23 (Pa. Super. 2013) ("[L]iability is fairly determined when the court is convinced upon a review of the whole case that the jury [has] settled the issue as to responsibility fairly and upon sufficient evidence—so that . . . it ought to stand as the final adjudication of the rights of the parties." (citation omitted and formatting altered)); *see also Mirabel v. Morales*, 57 A.3d 144, 152 n.8 (Pa. Super. 2012) ("[L]iability is not intertwined with damages when the question of damages is readily separable

from the issue of liability." (citation omitted)). We also find that a new trial limited to damages is appropriate because Mrs. Mazzie endured compensable pain and suffering.

As to the scope of the new proceeding, we find that the damages for Mrs. Mazzie's past medical expenses were fairly determined. The parties stipulated to Mrs. Mazzie's past medical expenses, and the trial court instructed the jury on this stipulation. Therefore, we find that damages for past medical expenses are sufficiently independent and discrete from damages for pain and suffering as to limit a new trial to those damages only. *See Mader*, 241 A.3d at 614.

Lastly, we do not agree with Appellants' contention that the jury reached a compromise verdict. This Court has explained that a "compromise verdict is one where the jury, in doubt as to the defendant's negligence or [the] plaintiff's contributory negligence, returns a verdict for the plaintiff but in a lesser amount than it would if these questions had been free from doubt." *Fischer v. Troiano*, 768 A.2d 1126, 1131 (Pa. Super. 2001) (formatting altered and citation omitted).

We agree with the trial court that the jury's verdict here does not meet the definition of a compromise verdict. *See* Trial Ct. Op., at 13-14. The jury did not find that Mrs. Mazzie was contributorily negligent. Nor did the jury return a verdict in a lesser amount than the stipulated medical expenses. Rather, the jury, as stated above, assigned full liability to Dr. Garcia. *See*

Jury Verdict Sheet, 8/30/19, at 1. As such, we find that the jury did not reach a compromise verdict. *See Fischer*, 768 A.2d at 1131.

For these reasons, we conclude that the record supports the trial court's ruling that it was unreasonable for the jury to believe that Mrs. Mazzie did not endure compensable pain and suffering. Because the record supports the trial court's ruling, we find that the trial court did not abuse its discretion in granting a new trial on damages.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/16/21