J-A23007-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MISTE SWANK, AS EXECUTRIX OF THE ESTATE OF THOMAS SWANK | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 342 WDA 2025 |
| RABKIN DERMATOPATHOLOGY LABORATORY, P.C.; FOREFRONT DERMATOLOGY, S.C. T/D/B/A FOREFRONT DERMATOLOGY, P.C.; MELANIE COSTA, M.D.; MILENA E. KOZOVSKA, M.D.; SABA M. ALI, M.D.; OMAR P. SANGUEZA, M.D.; CUTANEOUS PATHOLOGY, P.A., | : | |

Appeal from the Judgment Entered March 4, 2025
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD21-002360

BEFORE: PANELLA, P.J.E., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY PANELLA, P.J.E.: **FILED: December 15, 2025**

In this medical negligence case, Miste Swank, as executrix of the estate of Thomas Swank ("Decedent"), appeals from the entry of judgment on the jury verdict in favor of Omar P. Sangueza, M.D. and Cutaneous Pathology, P.A. After careful review, we reverse and remand for a new trial.

The trial court summarized the factual history of this case as follows:

In 2016[,] [the decedent], age 45, had a blister on the palm of his hand from riding a dirt bike, shoveling dirt or similar manual labor. When approximately 6 months passed without the blister healing, [Decedent] went to see Dr. Gelacek, his primary care physician, who referred him to the wound clinic at Armstrong County Memorial Hospital. He then was referred to Dr. Falcon, who

cut some of the skin that would not heal from his hand. With his hand still not healing after the skin removal, Dr. Falcon recommended that [Decedent] see a dermatologist. It was January of 2018 when [Decedent] went to Forefront Dermatology and was examined there by physician's assistant Caitlyn Stowe. A skin cancer named "squamous cell carcinoma" was one of the diagnoses considered by Ms. Stowe. A shaved biopsy was taken from the wound and submitted to Rabkin Dermatopathology Laboratory. The biopsy slides were examined and Rabkin Dermatopathology determined there was no cancer in the biopsy. Forefront Dermatology provided topical treatment for the wound, and in April of 2018[, the decedent] had drastically improved with the wound healing well.

[Decedent] returned to Forefront in March of 2019 and was examined by physician's assistant Melissa Hutzler. There were signs this same wound on his hand was infected and [Decedent] felt fatigued. [Decedent] returned to Forefront [Dermatology] on April 19, 2019 and his condition had not improved. Ms. Hutzler performed a deeper biopsy of the wound and Rabkin Dermatopathology Laboratory again examined these biopsy slides. Rabkin found [Decedent]'s epidermis was irregularly thickened and inflamed, which Rabkin believed resulted from chronic trauma. Since [Decedent] had this problem for a long time and this was his second biopsy, Rabkin decided to send the biopsy slides to Omar Sangueza, M.D., of Cutaneous Pathology for an additional consultation. Dr. Sangueza determined [Decedent] had Picker's Nodule, which is not cancer and develops from trauma. Ms. Hutzler did not believe Picker's Nodule was a correct diagnosis. Between April and August of 2019, Ms. Hutzler treated the wound as if it were infected, prescribing, among other things, penicillin and ointments. With the condition of the wound continuing to worsen, Ms. Hutzler set up an appointment for [Decedent] with a different dermatologist at UPMC Shadyside Dermatology. A wedge biopsy was obtained by UPMC on August 30, 2019, and squamous cell carcinoma was diagnosed.

One day after [Decedent] was told of the squamous cell carcinoma diagnosis, he reported to UPMC Hillman Cancer Center. In October of 2019[,] his middle finger was amputated down to the knuckle joint, but 3 months later the cancer spread and his ring finger was amputated down to the knuckle joint. With the cancer continuing to spread, he had a third finger amputated. He had radiation treatment, but later his entire hand was amputated. The cancer

also spread to [Decedent]'s lymph nodes and surgery was needed to remove them. For about 9 months it seemed the cancer had stopped spreading, but then it was found in [Decedent]'s lung, vertebrae, spine and hip. He received additional radiation treatment and immunotherapy. [Decedent] was in pain that ultimately could not be controlled with oxycodone, fentanyl and other medications. On April 3, 2022, at the age of 51, [Decedent] died. He was survived by his wife, who was 41 years old, two adult children and two minor children, 12 and 13 years old.

Trial Court Opinion, 5/19/25, at 2-4.

The Swanks initiated this civil action for medical malpractice in March 2021, by filing a complaint, sounding in negligence and loss of consortium, against Forefront Dermatology, Rabkin Dermatopathology Laboratory and affiliated dermatopathologists Milena Kozovska, M.D. and Saba Ali, M.D., (Rabkin Dermatopathology and its two named doctors collectively referred to as the "Rabkin Defendants"), and Cutaneous Pathology and affiliated dermatopathologist Omar Sangueza, M.D. All defendants filed answers and new matter, asking to be dismissed from the case.

Following Decedent's death, the complaint was amended to substitute Swank, as the executrix of Decedent's estate, as the plaintiff, and now advancing wrongful death and survival actions against the named defendants. A second amended complaint was later filed, in which Melanie Costa, M.D., a dermatologist affiliated with Forefront Dermatology, was added as a defendant (together referred to as the "Forefront Defendants").

Prior to trial, Swank reached a monetary settlement with the Forefront Defendants and the Rabkin Defendants (collectively, the "Settling

Defendants"). As part of this settlement, Swank executed a joint tortfeasor release on March 12, 2024, (the "Release"), in accordance with the Uniform Contribution Among TortFeasors Act ("UCATA"), 42 Pa.C.S.A. §§ 8321–8327. This Release provided that if Dr. Sangueza and Cutaneous Pathology (the "Non–Settling Defendants") were found to be joint tortfeasors with any of the Settling Defendants, the damages the Non–Settling Defendants would be required to pay would be reduced in proportion to the extent fault was attributed to the Settling Defendants. *See* Amended New Matter to Plaintiff's Second Amended Complaint in Civil Action, at Exhibit A.

Shortly thereafter, the Settling Defendants filed amended new matter, asserting the Release as an affirmative defense, and asserting the Complaint should be dismissed against them, and judgment entered in their favor.

The Non-Settling Defendants then filed a motion for leave of court to file an amended answer, new matter, and a cross-claim against Forefront Dermatology. In the motion, the Non-Settling Defendants asserted they were intending to rely at trial upon expert witnesses retained by Swank to criticize the Forefront Defendants, but were now anticipating that Swank would no longer be calling those experts due to the Release. *See* Motion, 8/22/24, at 2. The Non-Settling Defendants asserted their intent to now prove at trial that "Forefront Dermatology is solely liable to [Swank] for any damages sustained, or jointly and severally liable with" the Non-Settling Defendants. *Id.* Accordingly, the Non-Settling Defendants requested leave of court to file a

cross-claim against the Forefront Defendants and thereafter retain and file the report of a qualified expert witness to testify to the issues of standard of care and causation related to the Forefront Defendants. *See id.* at 3. Swank and Forefront Dermatology opposed the motion. Following a hearing, the trial court denied the motion.

The Settling Defendants thereafter filed motions requesting that they be dismissed from the case based on the Release, the lack of cross-claims against the Settling Defendants, and Swank's admission that she did not intend to present any evidence against the Settling Defendants at trial. Following argument, the trial court denied the motions.

Jury selection took place on October 7, 2024. The next day, argument was held on numerous motions *in limine* filed by the parties. During argument, the Forefront Defendants and Swank again brought up the request for the Forefront Defendants to be dismissed. *See* N.T., Jury Trial, October 8-16, 2024, at 33-39. The court insinuated it was reluctant to grant dismissal prior to trial because it was contemplating keeping the Settling Defendants on the verdict sheet based on the court's reading of the Fair Share Act.[1] *See id.* at 33. The Forefront Defendants informed the court that if they were not going to be dismissed, they were then going to file a motion for compulsory nonsuit at the close of Swank's case. *See id.* at 38. Swank stated she was going to

_____

[1] 42 Pa.C.S.A. § 7102

agree to the nonsuit, and the Rabkin Defendants asserted their intent to also move for compulsory nonsuit. ***See id.*** at 38-39. The court acknowledged that no evidence was being put in against the Forefront Defendants, but expressed its uncertainty about what stage dismissal should be permitted. ***See id.*** at 39. The court subsequently ruled that no defendants were to be dismissed before trial. ***See id.*** at 49.

At the conclusion of Swank's case, the Forefront Defendants made a motion for compulsory nonsuit, on the grounds that Swank had not presented any evidence of the Forefront Defendants' negligence or standard of care, and therefore had not put on a *prima facie* case as to the Forefront Defendants. ***See id.*** at 420-22. Again, the Court discussed its uncertainty over how the Fair Share Act affected whether or not settling defendants stayed in the case. ***See id.*** at 420-423. The Non-Settling Defendants conceded that there were no grounds to oppose the motion as they had no expert testimony to present against the Forefront Defendants. ***See id.*** at 423-24. The Rabkin Defendants also made a motion for compulsory nonsuit. ***See id.*** at 424. Swank agreed that the Forefront Defendants should be out of the case, noting this position was not opposed by any party. ***See id.*** at 425. The trial court granted the motion for nonsuit as to the Forefront Defendants and ruled their names would not be provided on the jury verdict. ***See id.*** at 430-32. The court deferred a decision on a nonsuit as to the Rabkin Defendants. ***See id.*** at 431.

After the defense rested, the trial court dismissed Dr. Ali from the case and ruled her name would not be on the jury verdict sheet, concluding there had been no expert testimony or other testimony stating Dr. Ali had been negligent.

At the end of the trial, the jury returned a verdict in favor of all remaining defendants on the verdict sheet – Dr. Sangueza, Cutaneous Pathology, and Dr. Kozovska – finding none were negligent. The trial court molded the verdict by vacating it relative to Dr. Kozovska and making it a verdict in favor of only the Non-Settling Defendants.

Swank filed a motion for post-trial relief, arguing (1) the trial court erred by not dismissing the Forefront Defendants from the case prior to trial, and that (2) Swank is entitled to judgment notwithstanding the verdict ("JNOV") and/or a new trial as the verdict was against the weight of the evidence. Following submission of briefs at the court's direction, and oral argument, the trial court denied the motion for post-trial relief on February 26, 2025. The Non-Settling Defendants praeciped to enter judgment on the verdict. On March 4, 2025, a final judgment was entered on the docket against Swank and in favor of the Non-Settling Defendants. This timely appeal followed.

On appeal, Swank challenges the trial court's denial of her motion for post-trial relief, reiterating the same issues raised in the motion as follows:

> A. Did the trial court err as a matter of law and/or abuse its discretion by not dismissing the []Forefront []Defendants[] from the case prior to trial, [where] it was legally impossible for there to be a *prima facie* case of medical negligence against them?

B. Did the trial court err and/or abuse its discretion by not granting [Swank JNOV] and/or a new trial as the verdict was against the weight of the evidence?

Appellant's Brief, at 5 (unnecessary capitalization and suggested answers omitted).

This Court has summarized the principles governing the review of the denial of a motion for a new trial as follows:

> Consideration of all new trial claims is grounded firmly in the harmless error doctrine which underlies every decision to grant or deny a new trial. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake. Once the trial court passes on the moving party's claim, the scope and standard of appellate review coalesce in relation to the reasons the trial court stated for the action it took. Where the court is presented with a finite set of reasons supporting or opposing its disposition and the court limits its ruling by reference to those same reasons, our scope of review is similarly limited....
>
> Our standard of review prescribes the degree of scrutiny we apply to the trial court's decision and the manner in which we evaluate its conclusions. If the trial court's challenged ruling was one of law, we review its grant or denial of a new trial on that point to discern if the court committed legal error. Similarly, if the challenged ruling involved a discretionary act, we review the disposition of the new trial motion relative to that act for abuse of discretion.

*Crespo v. Hughes*, 167 A.3d 168, 180-81 (Pa. Super. 2017) (citations omitted and formatting altered).

First, Swank argues the trial court erred and/or abused its discretion by not dismissing the Forefront Defendants from the case prior to trial. *See* Appellant's Brief, at 22.

Initially, we address the Non-Settling Defendants claim that Swank has waived this issue by failing to preserve it by appropriate objection or motion with the trial court. *See* Appellees Brief, at 16. Specifically, the Non-Settling Defendants argue the motion concerning the dismissal of Forefront Dermatology was made by Forefront Dermatology, not by Swank. Further, the Non-Settling Defendants argue Swank failed to set forth in her post-trial motion the grounds for relief and how those grounds were asserted during pre-trial proceedings or at trial, in violation of Pennsylvania Rule of Civil Procedure 227.1.

Rule 227.1 governs post-trial motions in civil matters, and requires all issues raised in a post-trial motion to have been preserved either prior to or during trial, and that the post-trial motion specify where the grounds for relief were asserted in pre-trial proceedings or at trial. *See* Pa.R.C.P. 227.1(b).

> The purpose of Rule 227.1(b) is to provide the trial court with an opportunity to review and reconsider its earlier rulings and correct its own error. If the trial court is given this opportunity, and chooses to address the contentions set forth in the post-trial motions, we will not preclude presentation of the issue on appeal merely because appellant has not strictly complied with the rule. *See American Ass'n[ v. Casualty Reciprocal*, 588 A.2d 491, 495 (Pa. 1991)*; see also Takes v. Metropolitan Edison Co.,* [] 655 A.2d 138, 143–44 ([Pa. Super.]1995) (*en banc*) (although the formal objection first made in a post-trial motion and was vague and obscure exchange between trial court and attorney coupled with a trial court's finding that issues were not waived were enough to preserve issues for our appellate review); *Meeting House*[ *Lane, Ltd. v. Melso*, 628 A.2d 854, 857 (Pa. Super. 1993)] (holding that although appellant was "not in full conformity with both the spirit and the letter of Rule 227.1's requirement that the post-trial motion state how the grounds for relief were asserted in a pre-trial proceeding or at trial," issue would

nonetheless be reviewed on appeal, because the trial court had opportunity to correct its own error); *James v. Nolan,*[] 614 A.2d 709, 711 n. 1 ([Pa. Super.] 1992) (issue on appeal would be addressed even though appellant's first formal objection was in post-trial motion).

*Soderberg v. Weisel*, 687 A.2d 839, 845 (Pa. Super. 1997) (some citations omitted).

We find the waiver argument by the Non-Settling Defendants at this juncture very disingenuous. This issue had been thoroughly addressed by all of the parties and the trial court from prior to trial, including a hearing on the motion to dismiss, numerous discussions during trial, in briefs submitted in response to Swank's post-trial motion, argument held on the post-trial motion, and during oral argument with this Court. It is clear the court was given multiple opportunities to review and reconsider its ruling on this issue. It is also clear from our review of the trial transcript that Swank agreed that the Forefront Defendants should be dismissed from the case, and was unequivocal from the start that there would not be any expert opinions or evidence submitted that Forefront breached the standard of care.

As the trial court was given the opportunity to review and reconsider its earlier ruling and correct its own error, and the court chose to address the contention set forth in the post-trial motion, we will not preclude presentation of the issue on appeal, even if we assume *arguendo* that Swank did not strictly comply with the rule governing post-trial motions. **See id.** ("If the trial court is given this opportunity, and chooses to address the contentions set forth in

the post-trial motions, we will not preclude presentation of the issue on appeal merely because appellant has not strictly complied with the rule."). We therefore proceed to address the merits of this issue.

On appeal, Swank argues the trial court erred and/or abused its discretion by not dismissing the Forefront Defendants from the case prior to trial where it was legally impossible for there to be a *prima facie* case of medical negligence against them. **See** Appellant's Brief, at 22. Swank argues the court's delay in dismissing the Forefront Defendants until mid-trial caused "insurmountable and avoidable prejudice" to her case, based on a "misplaced reliance on the Fair Share Act." **Id.**

In response, the trial court maintains its position that it did not err in denying dismissal of the Forefront Defendants prior to trial.

The court relies on **Roverano v. John Crane, Inc.**, 226 A.3d 526 (Pa. 2020), for its analysis of the Fair Share Act, asserting the two cases are similar. **See** Trial Court Opinion, 5/19/25, at 9. In **Roverano**, the Pennsylvania Supreme Court determined the trial court erred in refusing to apply the Fair Share Act in order to include settled bankruptcy trusts on the verdict sheet. **Roverano**, 226 A.3d at 549. There is no question that the trial judge conscientiously tried to resolve the issue of whether to dismiss the Settling Defendants prior to trial or require their continued presence. However, we unfortunately are constrained to conclude that the trial court's reliance on the Fair Share Act and **Roverano** is misplaced.

To determine whether the court properly applied the Fair Share Act, our standard of review is de novo and our scope of review is plenary. ***See Spencer v. Johnson***, 249 A.3d 529, 557 (Pa. Super. 2021). We must keep in mind that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions[]" based on the clear language of the statute. ***Id.*** The Fair Share Act's predecessor was the Comparative Negligence Act, which was passed to ensure "an injured plaintiff [could] recover against a negligent defendant or defendants even though plaintiff's negligence contributed to the accident in an equal or lesser way[,] but the plaintiff's recovery was reduced based on his negligence." ***Id.*** (citation omitted). The Fair Share Act re-enacted the Contributory Negligence Act after it was temporarily repealed. The Fair Share Act provides, in pertinent part:

> **(a) *General rule.***—In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.
>
> **(a.1) *Recovery against joint defendant; contribution.***
>
> (1) Where recovery is allowed against more than one person, including actions for strict liability, and where liability is attributed to more than one defendant, each defendant shall be liable for that proportion of the total

> dollar amount awarded as damages in the ratio of the amount of that defendant's liability to the amount of liability attributed to all defendants and other persons to whom liability is apportioned under subsection (a.2).
>
> (2) Except as set forth in paragraph (3), a defendant's liability shall be several and not joint, and the court shall enter a separate and several judgment in favor of the plaintiff and against each defendant for the apportioned amount of that defendant's liability.

42 Pa.C.S.A. § 7102 (emphasis added).

Based on the Fair Share Act's clear, unambiguous language, when giving effect to all its parts, particularly in light of its legislative history and purpose, our Court has concluded that for the "Fair Share Act to apply, the plaintiff's negligence must be an issue in the case." **Spencer**, 249 A.3d at 559. It is undisputed that the plaintiff's negligence was not an issue in this case.

Accordingly, "while this case involved multiple tortfeasors, it would have been improper to apply a statute that addresses the scenarios where a claimant may have contributed to the accident and the possible preclusion of recovery based on a plaintiff's own negligence." **Id.** at 560. We therefore conclude the trial court erred in relying on the Fair Share Act to keep the Forefront Defendants in the case.[2]

---

[2] We note that the court's reliance on **Roverano** was also misplaced as, in that asbestos litigation, the defendants argued that Plaintiff's 30-year history of smoking was a factual cause of his lung cancer. **See Roverano**, 226 A.3d at 528. There is no such comparative negligence claim against Swift here.

Despite their focus on the above two arguments, the Non-Settling Defendants and the trial court both alternatively argue that the court's decision not to dismiss the Forefront Defendants before trial was proper under the UCATA. **See** Appellee's Brief, at 19-20 (arguing that under the UCATA "a settling defendant's participation in a case is necessary to determine joint and several liability."); **see also** Trial Court Opinion, 5/19/25, at 12.

Section 8326 of the UCATA provides:

A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides, but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid.

42 Pa.C.S.A. § 8326.

Here, the Release executed by Swank and given to the Settling Defendants stated in pertinent part:

It is understood that I, Miste Swank, as Executrix of the Estate of Thomas Swank, Deceased, am not hereby releasing any claims or demands that I have against Omar P. Sangueza, M.D. and Cutaneous Pathology, P.A. … It is further understood and agreed, however, that if it should be determined that Omar P. Sangueza, M.D. and Cutaneous Pathology, P.A. are jointly or severally liable to the plaintiffs with any person or entity herein released, in tort or otherwise, the claim against and damages recoverable from Omar P. Sangueza, M.D. and Cutaneous Pathology, P.A. shall be reduced by the amount determined by the sum of the prorata share of legal responsibility or legal liability for which the parties herein released are found to be liable as a consequence of the aforesaid medical care or treatment. It is intended that this Release shall comply with and be interpreted in accordance with the Uniform Contribution among Joint Tortfeasors Act as enacted and amended in Pennsylvania.

Amended New Matter to Plaintiff's Second Amended Complaint in Civil Action, at Exhibit A. The effect of this provision was that if any, or all, of the Settling Defendants were found to be jointly liable with the Non-Settling Defendants, the Non–Settling Defendants would be allowed to reduce the amount of any monies jointly owed by them and the Settling Defendants to Swank in an amount equal to the Settling Defendants' apportioned share of the verdict.

However, this Court has concluded there is no absolute right to have settling co-defendants placed on a verdict sheet. **See Hyrcza v. West Penn Allegheny Health System**, 978 A.2d 961, 969 (Pa. Super. 2009). Our case law makes it clear "a trial court must determine whether any evidence of a settling co-defendant's liability exists before deciding whether to put that co-defendant on a jury verdict slip." **Id.** "If the evidence is insufficient to support a *prima facie* case against a settling codefendant, [our case law] make[s it] clear that such co-defendant may be left off the jury verdict slip." **Id.**

Accordingly, the entitlement for settling defendants to remain as parties to an action in order to establish their status as joint tortfeasors, and then have a jury apportion liability among those parties, is tempered by the fact that the jury is only permitted to consider the liability of defendants for whom a *prima facie* case has been established in the first place. **See id.**

To establish a *prima facie* cause of action for medical negligence, a plaintiff must demonstrate:

(1) a duty owed by the physician to the patient; (2) a breach of that duty; (3) that the breach of duty was the proximate cause of the harm suffered by the patient; and (4) that the damages suffered were a direct result of that harm.

***Mazzie v. Lehigh Valley Hospital—Muhlenberg***, 257 A.3d 80, 87 (Pa. Super. 2021) (citation omitted).

Our courts have held that because the complexities of the human body place questions as to the cause of pain or injury beyond the knowledge of the average layperson, a medical malpractice plaintiff generally must produce the opinion of a medical expert to demonstrate the elements of his cause of action. Thus if, at the conclusion of discovery, the plaintiff fails to produce expert medical opinion addressing the elements of his cause of action within a reasonable degree of medical certainty, he has failed to establish a prima facie case and may not proceed to trial.

***Miller v. Sacred Heart Hospital***, 753 A.2d 829, 833 (Pa. Super. 2000) (internal citations and quotation marks omitted).

The trial court argues it was proper to keep the Forefront Defendants in the trial because Swank "could not predict the trial testimony of her experts, particularly on cross-examination," and similarly could not predict if the Non-Settling Defendant's expert would testify critical of Forefront. Trial Court Opinion, 5/19/25, at 11.[3] We unfortunately have to agree with Swank that the trial court's opinion in this regard is flawed.

---

[3] While this contention is provided in the portion of the trial court's argument regarding the Fair Share Act, the court clearly relies on this contention in support of its UCATA argument as well. ***See*** Trial Court Opinion, 5/19/25, at 13 (stating the court waited until it was certain there would be no evidence of malpractice against Forefront before taking them off the verdict sheet).

- 16 -

"Pennsylvania Rule of Civil Procedure 4003.5 requires parties to timely submit their expert reports, and confines the expert's testimony to the scope of those reports, to avoid unfair surprise." *Gregury v. Greguras*, 196 A.3d 619, 630-31 (Pa. Super. 2018) (*en banc*) (citations omitted).

Here, Swank made it clear since before trial that she did not intend to present any evidence about the Forefront Defendants deviating from the standard of care. *See* Forefront Defendants Motion to Dismiss, 9/30/24, at Exhibit A. Swank offered two trial experts, Dr. Paul Cohen, an anatomic pathologist, presented as a pathology expert, and Dr. Philip Friedlander, a medical oncologist, presented as a causation expert. Neither of Swank's experts offered any opinions critical of the Forefront Defendants in their expert reports, and in any event, Swank was not offering any expert witness who was qualified to testify about the dermatology standard of care. Finally, it is clear from the record that the Non-Settling Defendants also did not have an expert that was qualified to testify about the dermatology standard of care, and/or who provided those opinions in an expert report. Accordingly, no *prima facie* case was made out against the Forefront Defendants prior to trial, and could not have been made out during trial.

As there were no experts, from any party, that submitted reports with an opinion that Forefront breached the standard of care, it is simply not true that Swank "could not predict" if her own experts, or the Non-Settling Defendant's expert, would provide testimony critical of Forefront. As the

- 17 -

experts are confined to their reports, even if the experts had attempted to present testimony critical of Forefront, the testimony would not have been admissible. **See Gregury**, 196 A.3d at 630-31. We also agree with Swank that the trial court's argument relative to the Non-Settling Defendant's expert is confusing, as the trial court ultimately dismissed the Forefront Defendants prior to the defenses' case, the timing of which had previously been discussed upon the trial court denying the pre-trial dismissal. **See** N.T., Jury Trial, October 8-16, 2024, at 38-39. (Forefront stating it was going to move for dismissal after the plaintiff's case-in-chief, and plaintiff's counsel stating she would agree to that).

Expert testimony was needed to establish first, the standard of care applicable to the Forefront Defendants, and second, that the Forefront Defendants breached that standard of care. These are essential elements for a medical malpractice action. **Mazzie**, 257 A.3d at 87. Without such expert testimony, a *prima facie* case of medical negligence against the Forefront Defendants could not have been established. Accordingly, the trial court erred in permitting consideration of these defendants to go in front of the jury.

As we find the trial court erred by failing to dismiss the Forefront Defendants prior to trial, we also agree that this failure, and subsequent

dismissal of the Forefront Defendant's in the middle of trial, unfairly prejudiced Swank.[4]

Our concern here is that the jury was confused by the mid-trial dismissal of defendants, where those defendants should never have been presented to the jury in the first place. By the time the Forefront Defendants were dismissed, the jury had already been introduced to Forefront and their counsel; Forefront's counsel participated at trial by questioning witnesses; and the jury was informed by the Non-Settling Defendants of Swank's allegations against Forefront based on the Complaint.

Rather than focusing solely on the conduct of the Non-Settling Defendants, the jury was left wondering why Forefront was sued and

_____

[4] In her brief in support of her post-trial motion, Swank separated her argument into three sections, listing the two issue statements above as (A) and (C) respectively, and separately arguing in a part (B) that she suffered prejudice due to the error alleged in her first issue, but in the context of an evidentiary analysis. Swank has divided her argument section in her appellate brief the same way, arguing in a separate section that she "was unfairly prejudiced whenever Forefront Dermatology and Dr. Ali were dismissed from the case in the middle of trial," based on an evidentiary argument. Appellant's Brief, at 29.

In so arguing, Swank relies on a case that held the trial court properly exercised its discretion to preclude counsel from arguing alternate theories for which there was no evidence. **See** Appellant's Brief, at 33 (citing to **Winschel v. Jain**, 925 A.2d 782, 796 (Pa. Super. 2007). We do not find **Winschel** applicable here. First, Forefront being a party to this case is not evidence. Further, saying the court abused its discretion in allowing the doctor to testify about alternate theories that had no evidentiary support is a completely different argument than the issue Swank has raised. In any event, due to our disposition of Swank's first issue, we need not reach the remainder of the issues raised on appeal.

dismissed in a notably unforthcoming manner. We emphasize, this was not a clear-cut situation where a defendant requested, in the presence of the jury, to be dismissed for lack of evidence, the court granted that request, and the court informed the jury why the defendant was dismissed so that the jury was clear on the reasons. Instead, the whole situation with Forefront was kept secretive from the jury, based on the court's mistaken reliance on the Fair Shair Act and mistaken belief that the Fair Shair Act somehow necessitated Forefront being on the verdict sheet without needing to defend itself at trial. This left the jury to speculate without giving them the information they needed to make an informed decision. The Non-Settling Defendants were able to insinuate negligence on the part of Forefront at trial, despite there being no possibility of a *prima facie* case of medical negligence against them. Further, the Non-Settling Defendants were able to do this due to the trial court's improper application of the law, which constitutes an abuse of discretion.

For the foregoing reasons, we conclude the trial court erred by refusing to grant Swank's post trial motion seeking a new trial. Accordingly, we reverse and remand for a new trial.

Judgment reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 12/15/2025