J-A08022-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOSEPH TERMINI AND EMMA TERMINI, H/W | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILLIAM A. REDEL AND CYNTHIA F. REDEL, H/W | : | No. 1456 EDA 2025 |
| Appellants | : | |

Appeal from the Judgment Entered August 19, 2025
In the Court of Common Pleas of Chester County Civil Division at No(s):
2022-06213-CT

BEFORE:   LAZARUS, P.J., PANELLA, P.J.E., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED JUNE 11, 2026**

William A. Redel and Cynthia F. Redel appeal from August 19, 2025 judgment entered following the trial court's non-jury verdict in favor of Appellees, Joseph Termini and Emma Termini, and against Appellants, on count 1 – violation of the Pennsylvania Real Estate Seller Disclosure Law ("RESDL")[1], in the amount of $19,399.00; and count 2 – violation of Pennsylvania Unfair Trade Practice and Consumer Protection Law ("UTPCPL")[2], in the amount of $30,100.00.  For the reasons that follow, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 68 Pa.C.S. § 7301, **et seq**.

[2] 73 P.S. § 201-1, **et seq**.

By way of background, we note that this matter involves a dispute over whether Appellants properly disclosed the age and components of the septic system on property Appellees purchased from them in Chester County, Pennsylvania (the "Property") on August 24, 2020.

The trial court summarized the relevant facts of this case as follows:

> Prior to the sale to [Appellees], [Appellants] acquired the Property from William R. Schellenger on June 26, 1998. During the course of negotiations and during the pendency of the agreement of sale, Mr. Schellenger replaced most of the on-lot sewage disposal system for the Property on or about June 10, 1998. Mr. Schellenger installed a new treatment tank, new septic pump, and a new absorption area.
>
> Notably, the installer asked [Appellant] William Redel (since he and his spouse were buying the property) if he wanted a valve installed to switch between the new septic system and portions of the old one. [Appellant William Redel] replied that he did.
>
> [Appellants] purchased the Property and then later listed it for sale. [Appellants] completed a Sellers' Property Disclosure Statement signed on June 2, 2020 (the "Disclosure"). Line 206 of the Disclosure completed by [Appellants] states, "3. When was the sewage system installed (or date of connection, if public)? Spring 1998."
>
> On lines 241 through 244 of the Disclosure, the form asks, "Are you aware of any past or present leaks, backups, or other problems relating to the sewage system and related items?" [Appellants] answered "Yes" and gave an explanation: "(s]agging input line repaired Feb. 2020, Inlet baffle replaced April 2014." The Disclosure further asks at Lines 233 through 235: "(F) Sewage Pumps. 1. Are there any sewage pumps located on the property?" [Appellants] answered "NO" to the question. [Appellants] did not disclose that

- 2 -

there are two tanks and two fields located on the Property or that any components pre-dated 1998.

[Appellees] received the Disclosure and an inspection report authored by Westbrook Enterprise dated February 24, 2020 (four months prior to the [Appellees'] purchase of the Property), which stated that the septic system was in satisfactory condition. On that basis, [Appellees] executed an Agreement of Sale dated June 25, 2020 for $500,000.00 with an escalation to $525,000.00 (the "AOS"). In the AOS, [Appellees] waived the right to inspect the septic system. At some point [Appellant William] Redel informed [Appellees] of the valve to switch between fields for the septic system but did not mention that one of the fields dated back to the 1950s or 1960s.

[Appellant William] Redel testified that when [Appellants] purchased the Property in 1998, the then-seller (Mr. Schellenger) was replacing the septic system before closing. [Appellant William] Redel further stated that he received a call about installing a valve to switch between the old and new components when he was purchasing the Property. Thus, he was aware at the time of his purchase that some portion of the septic system pre-dated 1998. Moreover, an inspection report by Westtown Township during [Appellants'] ownership of the Property noted the system dates back to 1957-1959. Further, a 2018 township inspection indicated spongy areas around the lateral clean out and recommended switching between the two fields/absorption areas - namely, the 1998 and 1960.

Lastly, William Powell, who lives two houses away from the Property, testified he knew [Appellants] as neighbors and friends. He credibly testified that [Appellant William] Redel informed him that prospective purchasers offered $550,000.00 so long as a new septic system was put in, but the parties agreed on $525,000.00 since [Appellee Joseph] Termini was in the Marines and the purchasers would fix the septic system themselves.

The parties proceeded to closing on or about August 24, 2020. The day after settlement, a pump alarm went off at the Property. [Appellees] called [Appellants] and were told how to reset the pump alarm and to contact Hickman Sanitation Service. [Appellant William] Redel further stated that if the system was green then the pump was working. Hickman came to the Property in August of 2020, inspected the system, and stated that the pump needed to be replaced. Hickman charged $425.00 to clean out the system. That charge included cleanout of the first and second septic tanks as well as the pump tank. Hickman also quoted $1,600.00 to replace the pump. [Appellees] agreed and paid both of these bills. Finally, Hickman quoted $18,420.40 to replace the older 1960s tank. That work has not be done or paid for yet.

On October 13, 2020, [Appellees] hired Zoom Drain to clear a blockage for $379.00. [Appellees] hired Ferry Plumbing on November 25, 2020 to excavate to look at the system for $650.00. [Appellees] once again hired Hickman to clean out the first septic tank on December 3, 2020 for $550.00.

More recently, [Appellees] hired Quantum Environmental Enterprises for a system design for $850.00. This followed certification excavations and percolation tests in April of 2024 by Quantum for which [Appellees] paid $1,649.00. Lastly, [Appellees] received a quote from Quantum on November 12, 2024 for $14,650.00 to put in a new septic field. [Appellee] Joseph Termini also testified to multiple blockages, the smell of sewage in the lawn, surface water by the tanks, etc., during the course of their living in the Property.

Trial court opinion, 5/9/25 at 2-4 (footnotes and citations omitted).[3]

_____

[3] The trial court opinion does not contain pagination. For the ease of our discussion, we have assigned each page a corresponding number.

On March 27, 2023, Appellees filed a complaint against Appellants alleging violations of RESDL and the UTPCPL. Following several continuances, this matter proceeded to a two-day bench trial before the Honorable Bret M. Binder on November 14 and 15, 2024. On May 9, 2025, the trial court entered a decision in favor of Appellees and against Appellants, on count 1 – violation of the RESDL, in the amount of $19,399.00; and count 2 – violation of UTPCPL, in the amount of $30,100.00. Appellants were directed to **praecipe** the trial court Prothonotary to enter judgment on the trial court's May 9, 2015 decision, and on August 19, 2025, judgment was entered. This timely appeal followed.[4]

Appellants raise the following issues for our review:

> I. Is it an error of law for a trial court to disregard the statutory exemptions to a Seller's liability under the [RESDL] which provide that a Seller is not liable to a Buyer if the Seller produces a written report by a licensed professional relating to the scope of that person's expertise and when the Sellers reasonably believed that any previous material defect had been corrected?
>
> II. Is a failure to disclose the age of septic system components a violation of RESDL when the law states age alone does not constitute a material defect?

_____

[4] The trial court did not order Appellants to file a concise statement of errors complained of on appeal in accordance with Pa.R.A.P. 1925(b), but did file a one-page Rule 1925(a) opinion on July 15, 2025 indicting that it was relying on the reasoning set forth in its May 9, 2025 opinion.

III. Does RESDL permit a Seller to be liable for failing to answer a question on a [Seller's Disclosure Statement] that is not actually included on that form?

IV. If a Trial Court's opinion based on erroneous facts, must that decision be reversed?

V. Does an "as-is" clause in a real estate sales agreement show that a Seller possessed knowledge of and was actively concealing material defects?

VI. Can a Seller of real estate be found liable for violating [UTPCPL] on the basis of an underlying violation of RESDL when the Seller of said real estate did not violate RESDL[?]

VII. Is a trial judge capable of making informed credibility determinations of a witness's testimony, when they were physically absence from the courtroom during the entire trial?

Appellant's brief at 3-5.

Our appellate role in cases arising from nonjury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of the jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue ... concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty

> to determine if the trial court correctly applied the law to the facts of the case.

*Gamesa Energy USA, LLC v. Ten Penn Ctr. Assocs., L.P.*, 181 A.3d 1188, 1191–1192 (Pa.Super. 2018) (citation omitted; brackets in original), *affirmed*, 217 A.3d 1227 (Pa. 2019).

Preliminarily, we note that Appellants' failure to lodge an objection to the manner in which the trial court proposed to conduct the bench trial remotely due to Judge Binder's COVID diagnosis renders issue VII waived on appeal. *See* notes of testimony, 11/14/24 at 4-5; *see also Thorson v. EDDW, LLC*, 309 A.3d 141, 148 (Pa.Super. 2024) ("[i]n order to preserve an issue for appeal, a litigant must make a timely, specific objection at trial[.]"), *appeal denied*, 327 A.3d 611 (Pa. 2024); Pa.R.A.P. 302(a) ("[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

Turning to Appellants' remaining claims on appeal, we find that their myriad of claims that the trial court erred in concluding that Appellants violated the RESDL and the UTPCPL also warrant no relief. Our review of the record reveals that the trial court's findings are supported by competent evidence and are consistent with applicable law. Specifically, the record establishes that Appellants had knowledge of the inaccuracies and omissions on their Seller's Disclosure Statement with regard to the age of the septic system; the existence of a septic pump, and known problems with the septic system:

> [Appellants] knew when they purchased the Property, and [Appellants] knew through subsequent servicing and inspections, that part of the system predated 1998 but [Appellants] failed to disclose that on the appropriate line of the Disclosure.
>
> Moreover, [Appellants] knew the system in fact had significant issues as indicated by the testimony of [their next door neighbor, William] Powell. [Appellants] also received a Westtown Township letter on January 29, 2018 stating that "Your sewage system is malfunctioning, resulting in sewage on the ground surface."

*See* trial court opinion, 5/9/25 at 6 (citations omitted).

The failure to affirmatively disclose a "material defect" as defined in the RESDL is not the only way for a seller to violate the RESDL. In addition to requiring sellers to affirmatively disclose material defects, the RESDL also prohibits sellers from making "any representations that the seller or the agent for the seller knows or has reason to know are false, deceptive or misleading…," as is the case here. *See* 68 Pa.C.S. § 7308. Thus, Appellants are not entitled to any of the statutory exemptions from liability under the RESDL.

Furthermore, the record supports the determination that Appellants violated the UTPCPL based on their underlying violation of the RESDL. *See* trial court opinion, 5/9/25 at 8-10.

Accordingly, we adopt the well-reasoned, comprehensive opinion of the Honorable Bret M. Binder as our own for purposes of this appellate review.

We hereby direct the parties to attach the trial court opinion to this Memorandum in all future proceedings.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/11/2026

| | |
|---|---|
| JOSEPH TERMINI and EMMA TERMINI h/w, <br><br> Plaintiffs <br><br> vs. <br><br> WILLIAM A. REDEL and CYNTHIA F. REDEL, h/w, <br><br> Defendants | IN THE COURT OF COMMON PLEAS CHESTER COUNTY, PENNSYLVANIA <br><br> No. 2022-06213-CT <br><br> CIVIL ACTION – LAW |

Filed and Attested by PROTHONOTARY 09 May 2025 03:44 PM D. D'Andrea

## DECISION

**AND NOW,** this 9th day of May, 2025, after a bench trial on November 14, 2024 and November 15, 2024, this court finds in favor of Plaintiffs and against Defendants on:

1. Count 1 – Violation of the Pennsylvania Real Estate Seller Disclosure Law (RESDL), 68 Pa.C.S. § 7301, *et seq.*, in the amount of $19,399.00; and

2. Count II – Violation of Pennsylvania's Unfair Trade Practice and Consumer Protection Law, 73 P.S. § 201-1, *et seq.*, in the amount of $30,100.00.

**BY THE COURT:**

_____

**BRET M. BINDER, J.**

*2022-06213-CT*

# MEMORANDUM

The instant matter involves a dispute over disclosures made when Plaintiffs Joseph and Emma Termini purchased the property located at 501 Diane Drive, West Chester, Chester County, Pennsylvania (the "Property") on August 24, 2020 from Defendants William Redel and Cynthia Redel. Specifically, the issue is whether or not Defendants properly disclosed the age and components of the septic system.[1] For the reasons that follow, this court finds that Defendants violated: (1) the Pennsylvania Real Estate Seller Disclosure Law (RESDL), 68 Pa.C.S. § 7301, *et seq.*; and (2) the Pennsylvania Unfair Trade Practice and Consumer Protection Law, 73 P.S. § 201-1, *et seq.*

## Background

Prior to the sale to Plaintiffs, Defendants acquired the Property from William R. Schellenger on June 26, 1998. During the course of negotiations and during the pendency of the agreement of sale, Mr. Schellenger replaced most of the on-lot sewage disposal system for the Property on or about June 10, 1998. Mr. Schellenger installed a new treatment tank, new septic pump, and a new absorption area.

Notably, the installer asked Defendant William Redel (since he and his spouse were buying the property) if he wanted a valve installed to switch between the new septic system and portions of the old one. Mr. Redel replied that he did.

Defendants purchased the Property and then later listed it for sale. Defendants completed a Sellers' Property Disclosure Statement signed on June 2, 2020 (the "Disclosure"). Exhibit P-3. Line 206 of the Disclosure completed by Defendants states, "3. When was the sewage system installed (or date of connection, if public)? Spring 1998."

---

[1] Plaintiffs at trial raised and presented evidence regarding an undisclosed well on the property and issues in connection with the well. This court declined to address those issues as they were not fairly raised in Plaintiff's Complaint.

*2022-06213-CT*

On lines 241 through 244 of the Disclosure, the form asks, "Are you aware of any past or present leaks, backups, or other problems relating to the sewage system and related items?" Defendants answered "Yes" and gave an explanation: "[s]agging input line repaired Feb. 2020, Inlet baffle replaced April 2014." The Disclosure further asks at Lines 233 through 235: "(F) Sewage Pumps. 1. Are there any sewage pumps located on the property?" Defendants answered "NO" to the question. Defendants did not disclose that there are two tanks and two fields located on the Property or that any components pre-dated 1998.

Plaintiffs received the Disclosure and an inspection report authored by Westbrook Enterprise dated February 24, 2020 (four months prior to the Plaintiffs' purchase of the Property), which stated that the septic system was in satisfactory condition. Exhibit P-4. On that basis, Plaintiffs executed an Agreement of Sale dated June 25, 2020 for $500,000.00 with an escalation to $525,000.00 (the "AOS"). Exhibit P-1. In the AOS, Plaintiffs waived the right to inspect the septic system. At some point Mr. Redel informed Plaintiffs of the valve to switch between fields for the septic system but did not mention that one of the fields dated back to the 1950s or 1960s.

Mr. Redel testified that when Defendants purchased the Property in 1998, the then-seller (Mr. Schellenger) was replacing the septic system before closing. Mr. Redel further stated that he received a call about installing a valve to switch between the old and new components when he was purchasing the Property. Thus, he was aware at the time of his purchase that some portion of the septic system pre-dated 1998. Moreover, an inspection report by Westtown Township during Defendants' ownership of the Property noted the system dates back to 1957-1959. Exhibit P-6 (Inspection report from April 10, 2014). Further, a 2018 township inspection indicated spongy areas around the lateral clean out and recommended switching between the two fields/absorption areas – namely, the 1998 and 1960. Exhibit P-8.

Lastly, William Powell, who lives two houses away from the Property, testified he knew Defendants as neighbors and friends. He credibly testified that Mr. Redel informed him that

*2022-06213-CT*

prospective purchasers offered $550,000.00 so long as a new septic system was put in, but the parties agreed on $525,000.00 since Mr. Termini was in the Marines and the purchasers would fix the septic system themselves.[2]

The parties proceeded to closing on or about August 24, 2020. The day after settlement, a pump alarm went off at the Property. Plaintiffs called Defendants and were told how to reset the pump alarm and to contact Hickman Sanitation Service. Mr. Redel further stated that if the system was green then the pump was working. Hickman came to the Property in August of 2020, inspected the system, and stated that the pump needed to be replaced. Hickman charged $425.00 to clean out the system. Exhibit P-14(a). That charge included cleanout of the first and second septic tanks as well as the pump tank. Id. Hickman also quoted $1,600.00 to replace the pump. Exhibit P-9. Plaintiffs agreed and paid both of these bills. Finally, Hickman quoted $18,420.40 to replace the older 1960s tank. Exhibit P-10. That work has not be done or paid for yet.

On October 13, 2020, Plaintiff hired Zoom Drain to clear a blockage for $379.00. Exhibit P-14(b). Plaintiff hired Ferry Plumbing on November 25, 2020 to excavate to look at the system for $650.00. Exhibit P-14(c). Plaintiff once again hired Hickman to clean out the first septic tank on December 3, 2020 for $550.00. Exhibit P-14(d).

More recently, Plaintiff hired Quantum Environmental Enterprises for a system design for $850.00. Exhibit P-11 (dated September 26, 2024). This followed certification excavations and percolation tests in April of 2024 by Quantum for which Plaintiffs paid $1,649.00. Exhibit P-14(f). Lastly, Plaintiffs received a quote from Quantum on November 12, 2024 for $14,650.00 to put in a new septic field. Plaintiff Joseph Termini also testified to multiple blockages, the smell of sewage in the lawn, surface water by the tanks, etc.,during the course of their living in the Property.

---

[2] The AOS purchase price was for $510,000.00 but had an escalation clause to $525,000.00 buttressing Mr. Powell's credibility.

## DISCUSSION

Plaintiffs assert two counts. The first count is for violation of the Pennsylvania Real Estate Seller Disclosure Law (RESDL), 68 Pa.C.S. § 7301, *et seq.* The second count is for violation of Pennsylvania's Unfair Trade Practice and Consumer Protection Law, 73 P.S. § 201-1, *et seq.* For the reasons that follow, this court finds in favor of Plaintiff on both counts.

### RESDL

RESDL provides that, "Any seller who intends to transfer any interest in real property shall disclose to the buyer any material defects with the property known to the seller by completing all applicable items in a property disclosure statement which satisfies the requirements of section 7304 (relating to disclosure form)." 68 Pa.C.S. § 7303. A "material defect" is defined by statute as "A problem with a residential real property or any portion of it that would have a significant adverse impact on the value of the property or that involves an unreasonable risk to people on the property. The fact that a structural element, system or subsystem is near, at or beyond the end of the normal useful life of such a structural element, system or subsystem is not by itself a material defect." 68 Pa.C.S. § 7102.

RESDL further provides that "In completing the property disclosure statement, the seller shall not make any representations that the seller or the agent for the seller knows or has reason to know are false, deceptive or misleading and shall not fail to disclose a known material defect." 68 Pa.C.S. § 7308. Lastly, RESDL provides that "[A]ny person who willfully or negligently violates or fails to perform any duty prescribed by any provision of this chapter shall be liable in the amount of actual damages suffered by the buyer as a result of a violation of this chapter. This subsection shall not be construed so as to restrict or expand the authority of a court to impose punitive damages or apply other remedies applicable under any other provision of law." 68 Pa.C.S. § 7311. These requirements apply irrespective of an "as is" clause located in an agreement of sale. See Phelps v. Caperoon, 190 A.3d 1230, 1238 (Pa.Super. 2018) ("RESDL contains no exceptions to the

*2022-06213-CT*

disclosure requirements, including the presence of an 'as is' clause in an agreement to transfer residential real estate, and thus, Seller must comply.") (citing 68 Pa.C.S. § 7303; Koken, 893 A.2d 70, 81; and Retina Assocs. of Greater Phila., 176 A.3d 263, 270, for the proposition that statutory construction requires the mandatory "shall" disclose language in RESDL to be interpreted as a requirement outside and apart from the requirements of the agreement of sale and any disclaimers therein).

Here, Defendants argue that the system was in fact a 1998 system and the age was properly disclosed. That statement is categorically false. Defendants knew when they purchased the Property, and Defendants knew through subsequent servicing and inspections, that *part* of the system predated 1998 but Defendants failed to disclose that on the appropriate line of the Disclosure. Exhibit P-3, Line 206.

Moreover, Defendants knew the system in fact had significant issues as indicated by the testimony of Mr. Powell. Defendants also received a Westtown Township letter on January 29, 2018 stating that "Your sewage system is malfunctioning, resulting in sewage on the ground surface." Exhibit P-7. This issue of ground surface sewage was known to Defendants. Accordingly, a false statement was given in lines 240-244, in which the only disclosure was a baffle issue. Moreover, it is reasonable for this court to infer that Defendants knew the pump alarm had been triggered in the past, and that the pump needed to be replaced, based upon Defendants expressing no surprise at the pump alarm when called the day after closing and immediately informing Plaintiffs on how to reset that alarm. It is extraordinarily unlikely that a part of the system failed for the first time in less than one day.

Lastly, Defendants stated that there is no sewage pump on the Property. Exhibit P-3, Lines 233-235. Defendants argue that a septic pump is apart from and distinct from a sewage pump and provided the testimony of William Westbrook, owner of Westbrook Enterprises to that effect. However, Mr. Westbrook testified that septic pumps are either sewage or effluent pumps.

*2022-06213-CT*

Ultimately, although an effluent pump may be considered by some experts as a septic pump as opposed to a raw sewage or solids sewage pump, this distinction is unavailing. Mr. Redel testified that he believed the category header on the Seller's Disclosure asked only about "sewage pumps" and not "septic pumps." Specifically, Section 10 of the Seller's Disclosure Form, line 202 states "10. Sewage System" and lines 233-34 are "(F) Sewage Pumps" and "1. Are there any sewage pumps located on the property?" Defendants claim that there was no need to list septic pumps since they are not specified. Defendants attempt to draw a distinction that is without support in law and belies common sense. A septic pump is part of the sewage system and Defendants failed to list that any existed. Moreover, the Disclosure in the section addressing sewage delineates between a public sewage system and an on-lot sewage disposal system (otherwise known as a septic system) and further asks about septic tanks. See lines 202-244. The Disclosure asks specifically at line 235 "what type(s) of pump(s)?" It is clear that, even if Defendants were reasonably confused, which this court does not find, the question about what type(s) of pump(s) required Defendants to list "effluent" or "septic" if Defendants believed that the distinction mattered. Instead, Defendants intentionally left the clear and materially misleading impression that no pump existed at the Property.

A defect in a septic system is material, as Defendants recognized by having Mr. Schellenger replace most of the on-lot sewage disposal system back in 1998. Defendants also recognized the materiality of the defects in the system in seeking an "As-Is" sale to avoid an inspection and having to repair or replace the septic system or any part thereof, as had Mr. Schellenger for Defendants. A material defect is "[a] problem with a residential real property or any portion of it that would have a significant adverse impact on the value of the property[.]" 68 Pa.C.S. § 7102. See also Anderson v. Harper, 622 A.2d 319 (Pa.Super. 1993) (holding that where sellers were aware of an ongoing problem with a septic system and failed to disclose it, they are liable for the damages as a result), *appeal denied*, 634 A.2d 222 (Pa. 1993). Mr. Termini credibly

testified that he chose not to have the system inspected because he relied on the lack of any material reported issues, the lack of any pump (which would have created complications), and the system dating back only to 1998. Mr. Termini credibly testified that he would have had the system inspected if he had known about those issues.

Accordingly, Plaintiffs are entitled to "the amount of actual damages suffered by the buyer as a result of a violation[.]" 68 Pa.C.S. § 7311; see Medlock v. Chilmark Home Inspections, LLC, 195 A.3d 277, 290 (Pa.Super. 2018) (holding that actual damages pursuant to RESDL are repair costs capped by market value; Phelps, *supra*, 190 A.3d at 1244 (holding that "for a tort claim involving repairable property damages, it is well-settled that 'repair costs (capped by market value) constitute the general measure of damages'") (citing Pa. Dep't of Gen. Servs. V. U.S. Mineral Prods. Co., 898 A.2d 890, 607 (Pa. 2006)).

Presently, this court finds that the actual damages to Plaintiffs are the following estimates and bills submitted by Plaintiffs in the amounts of: (i) $1,600.00 for the replacement of the pump, Exhibit P-9; (ii) $650.00 for excavating the system to determine the extent of issues, Exhibit P-14(c); (iii) $850.00 for a system design, Exhibit P-11; $1,649.00 for excavations and percolation tests; and (iv) $14,650.00 for a new septic field. These damages total $19,399.00.

This court did not credit the following claimed damages of: (a) $425.00 to clean the system, Exhibit P-14(a); (b) $379.00 to clear a blockage, Exhibit P-14(b); nor (c) $550.00 to clean the first septic tank, Exhibit P-14(d). Those expenses are customary charges for ongoing use and maintenance of a system and no evidence was presented to tie the material defects to those charges.

**UTPCPL**

The Unfair Trade Practices and Consumer Protection law, 73 P.S. § 201-1, *et seq.* (UTPCPL) provides a cause of action for unfair or deceptive trade practices. Id. at 201-2, 201-3 (definitions and unlawful acts respectively). The UTPCPL provides a private civil cause of action for damages:

*2022-06213-CT*

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

73 P.S. § 201-9.2(a).

The UTPCPL applies to violations of RESDL. See Growall v. Maietta, 931 A.2d 667, 676 (Pa.Super. 2007) (holding that where individuals sold property "[t]here is no question that the purchase or lease of a home, condominium, or apartment for residential purposes comes under the protections of the UTPCPL") (citing Valley Forge Towers South Condominium v. Ron-Ike Foam Insulators. Inc., 574 A.2d 641, 645 (Pa.Super. 1990)); Gabriel v. O'Hara, 534 A.2d 488 (Pa.Super. 1977) (finding sale of residential property is subject to UTPCPL); Bennett v. A.T. Masterpiece Homes v. Broadsprings, LLC, 40 A.3d 145 (Pa.Super. 2012) (holding that misleading conduct by a seller of real property is a violation of the catchall provision of the UTPCPL). See also 73 P.S. § 201-2(4)(xxi) (providing a catch all "unfair or deceptive act" as "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.").

As discussed above, Defendants omitted information regarding the age of the system, the existence of a septic pump, and known problems with the system. Mr. Termini credibly testified that Plaintiffs relied on those representations and would have inspected the system if they had known it included both a pump and parts pre-dating 1998. As a result of this reliance, Plaintiffs suffered damages as outlined above. Accordingly, Plaintiffs are entitled to damages pursuant to 73 P.S. 201-9.2(a) cited above.

Plaintiffs requested legal fees but not treble damages pursuant to the UTPCPL. To that end, Plaintiffs presented evidence of $23,114.00 paid to the Reidenback Law Firm, Exhibit P-16,

and invoices not yet paid to the law office of David J. Moloznik of $37,110.00, Exhibit P-17. Upon review of all of the facts of the case and the discretionary nature of the damages, the court awards $100 for violation of the UTPCPL as well as $30,000.00 of the attorney fees. See Wallace v. Pastore, 742 A.2d 1090 (Pa.Super.1999) (providing that a trial court's discretion to award attorney fees will not be disturbed absent an abuse of discretion; accord Com. ex rel. Corbett v. Ted Sopko Auto Sales & Locator, 719 A.2d 1111 (Pa.Cmwlth.1998).